HERBERT POWELL, Appellee, v. JAMES CHITTICK, Appellant.

1. **Sales:** WARRANTY: DECLARATIONS OF VENDOR. An affirmation by a vendor preceding a sale of hogs at public auction, to persons assembled for the purpose of bidding at such sale, that the hogs to be sold were "all right," the representation being made to effect a sale of the hogs, is a warranty that the hogs were not at the time infected with "hog cholera, swine plague, or other infectious disease," and a purchaser, at such sale, relying upon such representation, would be entitled to recover damages, for a breach of such warranty, although he had expressed himself prior to the sale, after looking at the hogs, that "he had made up his mind to buy some of the hogs, if they went cheap enough."

2. ———: ———: TESTIMONY OF EXPERTS: INSTRUCTION TO JURY. There having been introduced the testimony of two veterinary surgeons, as experts, one of whom had had sixteen years of practice, and the other less than one, *held*, that a general instruction to the jury that, this kind of evidence is competent and should be given such weight as in their judgment it was entitled to receive, was not objectionable as taking from the jury the right to determine the weight to be given such evidence.

3. **New Trial:** GROUNDS: MISCONDUCT OF COUNSEL IN ARGUMENT TO JURY. Where counsel, in the course of his argument to the jury, read to it certain interrogatories which were to be submitted to it for its special findings, informed it that its special and general verdicts should be consistent, and told it what its findings should be to support a verdict for his client, *held*, that such conduct was not objectionable, and was not, therefore, ground for a new trial.

4. **Special Verdict:** FORM OF INTERROGATORIES. A party is not entitled to have submitted to a jury for its special findings, any interrogatory having relation to facts which are not in dispute, or which embraces two or more questions, to which different answers might be returned.

VOL. 89—33

*Appeal from Adair District Court.*—HON. J. H. HENDER-
son, Judge.

WEDNESDAY, OCTOBER 18, 1893.

THE plaintiff and defendant are farmers in Adair
county, Iowa. In July, 1890, the defendant went to
Nebraska, and while there he purchased and shipped
to his farm in Adair county three car loads of hogs for
the purpose of feeding them. Thereafter, because of a
change of purpose on the part of his sons, in conse-
quence of which they were not to remain on the
defendant's farm, he concluded to sell the hogs at
public auction, and the eleventh day of September
following was fixed upon for that purpose, and notice
given thereof. The plaintiff was present at the sale
and purchased twenty-three of the hogs. He took them
home and placed them in a pen adjoining another pen
in which were twenty-three other hogs. Within a short
time fifteen of the hogs purchased of the defendant and
part of the others died of disease, and the plaintiff
brings this action to recover the damage, averring that
the defendant warranted the hogs to be sound and all
right, and further averring, in a second count, that the
representations as to the quality of the hogs were fraud-
ulent. The answer puts in issue the averments as to
the warranty and the fraud. There was a verdict and
judgment for the plaintiff, from which the defendant
appeals.—*Affirmed.*

*Sayles & Hinkson,* for appellant.

*Sever & Neal,* for appellee.

GRANGER, J.—With the general verdict the jury
returned the following special findings:
"*First.* Did the defendant, just before the sale of
the hogs, represent that the hogs were all right?

1. SALES: warranty: declarations of vendor.  Answer. Yes. *Second.* Was there a warranty, as in these instructions defined, that the hogs were all right? A. Yes. *Third.* Were the hogs, at the time of the sale, diseased with swine plague, hog cholera, or infested with other infectious disease? A. Yes. *Fourth.* Did the defendant, at the time of the sale, know that the hogs were so diseased? A. Yes.

It will be seen that the jury found that there was a warranty and also fraudulent representations, which gives to the general verdict the support of a finding for the plaintiff on both counts of his petition. The two counts of the petition being based on the same cause of action, but one recovery can be had, and the jury was so instructed; hence, if the record is without reversible error as to either cause of action, the verdict has such support as avoids a reversal.

We first notice the case upon the issue as to a warranty in the sale of the hogs. It is not to be seriously questioned that the hogs, when sold, were infected with "hog cholera, swine plague, or other infectious disease;" and this is the particular fact constituting the breach of the alleged warranty. A controversy arises over the fact of the warranty; that is, whether the plaintiff represented the hogs to be all right, and, if he did so, was the representation so made as to constitute a warranty? The court, in its instructions, said to the jury:

"*Seventh.* To constitute a warranty, no particular words or expressions are necessary, nor need the words 'warrant' or 'warranty' be used. Any distinct representation or affirmation of the condition or quality of the article or thing sold, made by the seller at the time of the negotiations for the sale, which he intended, and from which the purchaser at the time had reasonable grounds to suppose and believe were intended by him, to effectuate the sale, that the purchaser, in fact, did

so believe in making the purchase, relied thereon, and on the truth thereof, and which were operative in effecting the sale, is a warranty. It is not necessary to show that the seller at the time intended to cheat or deceive the purchaser in the sale, nor is the plaintiff required to show that the seller at that time knew the representations to be false; but he has the right to rely upon the representations or affirmations so made. The mere praise of the property sold, or a bare affirmation of its soundness, at the time when it was exposed for the purpose of inspection, does not, of itself, constitute a warranty; or if the purchaser had determined to purchase without such representations or affirmations, and formed his own opinion, and relied upon his own judgment, and did not rely upon the representations or affirmations, if any were made, then there is no warranty. In this case, if you find from the evidence that the defendant, at the time of and just before the beginning of the sale of the hogs, made the statements, to the persons there assembled for the purpose of bidding on the hogs then to be sold, that the hogs were all right, which he intended, and from which plaintiff had reasonable grounds to suppose and believe that the defendant intended, thereby to effectuate a sale of the hogs, and did. in fact so suppose and believe, relied thereon, and upon the truth thereof, and that such representations were operative in making the sale; that in fact said hogs were not all right, but were diseased with swine plague, hog cholera, or other infectious disease, then the plaintiff will be entitled to recover upon the first count of his petition. If you fail to so find, you must find for the defendant thereon."

The jury, under this instruction, specially found that there was a warranty, and the finding has ample support in the testimony. Not that the evidence is not conflicting, but it is of a character to sustain the

finding, and it is not important that we should discuss it at length.

Considerable importance is attached to the undisputed fact that the plaintiff was present, looking at the hogs, for some time before the sale commenced, and he said in his testimony that "he had made up his mind to buy some of the hogs, if they went cheap enough." Such a statement in evidence should not be taken as conclusive that his purchase was to be without conditions as to the health or soundness of the hogs, and it is both improbable and incredible that he would have even contemplated a purchase had he known or had a suspicion of their true condition.

It is urged that the words used were only those of commendation, and not such as would constitute a warranty. The rule as to an implied warranty is correctly stated in the instruction given, and, while such words might not at all times amount to a warranty, yet, when used for the purpose of having them relied upon in making the purchase, and they are so relied upon, and are as to facts on which the buyer has a right to rely, they amount to a warranty, and the question is usually one of fact. We may well apply the rule quoted by the appellant from Bennett's Benjamin on Sales, section 613: "It is rightly held by HOLT, C. J., and has been uniformly adopted ever since, that an affirmation at the time of a sale is a warranty, provided it appears. in evidence to have been so intended. In determining whether it was so intended, a decisive test is whether the vendor assumes to assert a fact of which the buyer is ignorant, or merely states an opinion or judgment upon a matter upon which the vendor has no special knowledge, and on which the buyer also may be expected to have an opinion, and to exercise his judgment. In the former case it is a warranty; in the latter it is not." There is not a requirement of the rule for a warranty that could not have been found in

this case under the evidence.  That the plaintiff, when he made the purchase, was ignorant of the facts as to the disease of the hogs is not to be doubted, and the defendant certainly "assumed to assert a fact" of which the plaintiff was ignorant.  There is testimony tending to show that the hogs were "off feed," or affected by overfeeding or change of climate, and that this condition was observable from inspection, and, when admitted, it is but a fact strengthening the claim in behalf of a warranty.  The defendant had an opportunity better than the buyers to know the true situation, and the buyers had a right to rely upon his special knowledge; and, as to the cause of the apparent condition, the buyers would not be expected to have an opinion.  It is likely true that the remark that the hogs were all right was made to remove any apprehension as to their apparent condition.  Under such circumstances, a purchase would most likely be made with reliance upon such a statement, and such a statement, made under such circumstances, would be designed to induce a purchase upon its reliance. Clearly the case is within the rule cited.

II.   The court gave a general instruction to aid the jury to know the value of, or weight to be given to, 2. ——: ——: tes- certain expert evidence by veterinary surtimony of ex- geons, where their opinions were based perts: instruc- tion to jury. on facts drawn from other evidence, and not from their personal observation.  There were two such witnesses, one of whom had sixteen years of practice and the other less than one, and the complaint is that the instruction practically told the jury that the testimony of the one of extended experience was "weak and inconclusive," compared with that of the other.  The instruction does not even indirectly refer to their evidence by way of a comparison or otherwise, but in a general way treats of such evidence.  The instruction is not open to the criticism that it takes

from the jury the right to determine the weight to be given to such evidence. It is said to the jury: "This kind of evidence is competent, and should be given such weight as in your judgment it is entitled to receive."

III. Complaint is made of the conduct of the plaintiff's attorney in the closing argument, in that he read to the jury the questions on which the findings were to be made, and the record indicates that he used language to the effect that its special and general verdicts should be consistent, and what the findings should be to support a general verdict for the plaintiff. The contention by the appellant is that "he had the right to have the questions answered without the knowledge of the jury as to the effect such answers might have upon their general verdict." It seems to us that the contention can not be sustained upon reason. If a party has such a right, under the law, then it must follow that a properly constituted jury will be ignorant of the law governing special and general verdicts. A moment's reflection upon the theory of jury trials will indicate the fallacy of the claim. Juries are, and should be, instructed that their general verdicts should be based upon controlling facts found by them; and the rule obtains whether the facts found are reported in the nature of special findings, or merely serve the jury in its mental process of reaching its conclusions. Such a rule and practice is only consistent with the fact of knowledge on the part of the jury that the general verdict rests upon, and must be consistent with, its conclusion upon particular facts. Special findings should only be of facts important to a general conclusion or verdict, and they are to be found by the jury whether specially returned or not. If the appellant's contention is to be sustained, the logical conclusion could not be escaped that, for the court to instruct a

3. NEW trial: grounds: misconduct of counsel in argument to jury.

jury that if certain facts were found, they would necessitate a particular general verdict in harmony with them, would be error, for it would inform the jury how to maintain consistency in its findings and general conclusions. It seems to us that the rule contended for would encourage an uncertain or gambling system of jurisprudence, to the detriment of that which is reasonable and fair. We see no error in permitting the questions to be read or stated to the jury, and the law and the evidence pertinent thereto discussed, to the end that the jury may have correct information. The case of *Timins v. Rock Island & Pacific R'y Co.*, 72 Iowa, 94, is authority for our conclusion, although upon somewhat different facts.

IV. The defendant asks that certain questions be submitted to the jury, which were refused, and this action by the court is assigned as error.

4. SPECIAL ver- Those submitted by the court on a former dict: form of interroga- tories. motion, in the main particulars, embraced the substance of part of those asked, and, as to the others, they were as to facts not in dispute, or improperly presented, as that two or more questions were embraced in one, where, upon separate questions, different answers might have been returned. We quote the second question asked, as stress is placed upon the action of the court in that particular:

"*Second.* Do you find from the evidence in this case that the plaintiff, Herbert Paul, before any statements were made by James Chittick or the auctioneer, inspected said hogs, and decided to buy some of said hogs, if the price was satisfactory, and did he buy said hogs in pursuance of such decision?"

The condition of the record is such that the last question could be well answered in the negative, while those preceding could well be answered in the affirmative, and such a question would tend rather to confuse than aid the correct solution of a case. We think there was no error in the refusal.

Upon the question of the warranty, we think the case was fairly submitted, and the verdict has full support in the evidence. The judgment is unquestionably a just one. We need not consider the questions presented as to the fraud in the sale, for, whatever might be the conclusion, the judgment must stand. The measure of damage, under the facts, is' the same in either case, and the court so instructed. The only question to be aided by a consideration of the question of fraud would be that as to costs, for which purpose we have examined the record, and think that in all respects the judgment should be AFFIRMED.