ISAAC BICE et al., Appellants, v. LORENZO SIVER et al., Appellees.

**COMPROMISE AND SETTLEMENT:** Consideration—Payment in Advance—Unliquidated Claims. The payment of a liquidated claim (rent notes) before maturity may be a sufficient consideration for the satisfaction of unliquidated claims pending between the parties.

**COMPROMISE AND SETTLEMENT:** Facts Showing—Evidence Re-
2   viewed. Evidence reviewed and held insufficient to establish,
*prima facie,* a compromise settlement.

**CONTRACTS:** Nonperformance—Difficulty Attending Performance—
3   Excuse. Inconvenience and difficulty attending the performance
of the terms of a contract is no excuse for nonperformance.

**AUCTIONS AND AUCTIONEERS:** Warranty—No Implied Author-
4   ity to Make. An auctioneer has no *implied* authority to warrant
property sold by him.

**EVIDENCE:** ''Parol Evidence'' Rule—Contracts Partly Written,
5   Partly Oral—When Oral Part Provable. A contract may be partly
in writing and partly in parol. If the parol part is concerning
a matter not covered by the writing, then, the written and parol
parts being harmonious, the parol part may be shown along with
the written.

PRINCIPLE APPLIED: A landlord and tenant, early in the
fall of the year, entered into an oral lease for the year follow-
ing. In January, following the oral lease, a written lease was
executed. *Held,* the written lease did not prevent the tenant
from showing that by the terms of the oral lease he was to have
the right to do certain plowing during the fall preceding the
execution of the written lease.

*Appeal from Linn District Court.*—HON. W. N. TREICHLER,
Judge.

THURSDAY, MAY 13, 1915.

ACTION to recover damages consequent on breaches of a
farm lease. A counterclaim was filed and on trial a verdict
returned for defendant. From judgment entered thereon
plaintiffs appeal.—*Reversed.*

*A. W. Fisher* and *Voris & Haas,* for appellants.

*Chas. W. Kepler & Son,* for appellees.

LADD, J.—Plaintiffs owned 240 acres of land, and, on
January 24, 1912, executed a lease thereof to the defendant
from January 1, 1912, to March 1, 1913. By the terms of
this lease, the tenant was to pay a rental of $960.00 and all

damages the lessor might sustain owing to any failure to perform its conditions. The lease required the defendant to haul out and spread on the land all the manure thereon or which might accumulate during the term, and it is alleged in the petition that the defendant failed to do this, to plaintiffs' damage in the sum of $75.00; that he misappropriated 1,334 feet of lumber of the value of $49.27; that he cut, moved and destroyed fences to replace which plaintiffs were put to an expense of $72.04; that he permitted to go to seed and spread Canada thistles on the land, to their damage in the sum of $50.00; and that he misappropriated four hinges, broke out window lights, carried away linoleum and removed a kettle, to their damage in the sum of $16.40. The answer pleaded a settlement, and in the counterclaim, defendant asked to be allowed $137.50 damages on breach of warranty in the sale of hay, and $20.00 owing to the refusal of plaintiffs to permit the defendant to plow in the fall on the place as agreed.

I. The evidence disclosed that, but for the plea of settlement, plaintiffs were entitled to recover for

1. COMPROMISE AND SETTLEMENT: consideration: payment in advance: unliquidated claims.

failure to haul out the manure. On the other hand, if there was a sufficient showing of settlement to carry the issue to the jury, error in any other rulings must have been without prejudice. At the outset then, it is important to inquire into the sufficiency of the evidence bearing on this issue. One-half the rent was payable January 1, 1913, and the other half on

2. COMPROMISE AND SETTLEMENT: facts showing: evidence reviewed.

March 1st following. In December previous, the defendant met plaintiff Isaac Bice at Walker, and talked with him a couple of hours at the bank. "We talked," says defendant Siver, "about the manure I hadn't got out and about all the different things I thought he would make me trouble over; I told him I had trouble on the land, couldn't get on to some sixty acres, and about the spoiled hay, that there were two or three feet of spoiled hay in the barn that I had to

feed to my cattle. I called plaintiff's attention to the hay when I found it was spoiled. I settled with him in Walker in December, 1912. I asked him to throw off two tons of hay, he wouldn't do it; then I asked him to throw off one ton and he wouldn't do it. He said if I would pay the rent he would be satisfied. I paid him $12.00 per ton for the hay, I told him I hadn't got the manure out, that I wasn't to go on to it in the fall and I didn't think that he ought to compel me to haul out what he had stocked up for years. He didn't say that he would do anything if I paid my notes, one of the rent notes was not due until March 1st. I asked him if he would take all the money, and he said, 'all right,' and I told the banker to draw up a check for the full amount and deduct the interest, and then there was something said by me about some guide wires that I put up at the corn crib.''

On cross-examination he testified that, when he paid the notes, he paid them in full, less discount for the unexpired time on the last note maturing. ''I wanted him to throw off $1.25 an acre for the land not plowed. He objected to it. There was something said about the manure. I told him how much I had hauled and how much I thought there was in there. I didn't want to do anything about the manure then.''

The brother of the defendant testified as follows: ''I was present when the defendant had a settlement with Mr. Bice at Walker on the 23rd of February, 1912. Was in the bank, my boy, myself and the defendant, and Mr. Hawkinson, the banker, was there. I talked some with Mr. Bice about the manure myself. He said he knew it was impossible to get that manure out in the fall the way the weather was. They had some talk about the hay. The defendant asked him to throw off on the hay and I heard him say that if he would throw off a ton or a couple of ton that it was going to be pretty hard to raise the rent that he had to pay. My brother spoke to him about the fall pasture and the condition of the

fences. After the defendant paid the rent, Bice said, 'It is settled up.' Q. What did he say after that? A. He said him and Lon was going to settle up and there would be no trouble. . . . Q. There wasn't anything said about manure? A. I didn't hear my brother say anything about manure that day.''

Hawkinson testified that he was the cashier of the bank and heard a part of the conversation. That he heard them talking about throwing off $1.00 an acre for the land not plowed, and some talk about hauling manure or failing to haul and other matters.

The appellant argues: first, that there was no consideration for any settlement; and second, that no agreement to settle the matters in dispute was made by the parties. The rent note was paid before maturity and, even though a discount was allowed, defendant was under no obligation to pay until it should become due. Of course, the discount was a consideration, but there may have been a consideration in addition to this, and if, as defendant contends, such additional consideration was the payment of the rent notes before maturity, then this would be ample to support the satisfaction of the unliquidated claims held by plaintiffs against defendant. A more difficult question to be determined is whether the parties entered into an agreement of accord and satisfaction. If so, this must be inferred from the language employed rather than from express words having such ·import. Undoubtedly they were discussing all matters now in controversy, but the most said from which an agreement could be inferred was by Bice, that he was satisfied. With what was he satisfied? The fair inference is that he was satisfied to allow the discount and receive the rent then instead of later. No offer of compromise had been made save by defendant, in attempting to procure an allowance of some of his claims, which Bice refused. There was no discussion as to whether plaintiffs would waive their claim to damages because of the omission

to haul out the manure, or to the other items involved in this suit, and we are inclined to the opinion that there was not sufficient evidence to carry the issue to the jury.

II. All the items on which plaintiffs made claim were in dispute save that for failure to haul out manure. The evidence showed without controversy that the defendant had failed to haul out 200 loads of manure which he had expressly agreed to haul and spread upon the premises. The circumstance that hauling it out in the fall was interfered with in some way, or that he may have gotten his wagon in the slough at one time did not excuse him from performing the conditions of the lease, and plaintiff was entitled to recover at least $75.00 because of the breach of the contract in failing to haul out and spread the manure upon the land.

3. CONTRACTS: non-performance: difficulty attending performance: excuse.

III. Plaintiffs had been occupying the farm and, before yielding possession to defendant, had an auction sale, at which the latter purchased 11 tons of hay at $12.50 per ton. It was in the hay mow and the evidence tended to show that the auctioneer in offering it for sale stated that it was nice, bright hay, though in fact the bottom 5 tons were musty and half of it rotten. The hay could not be examined save on the surface, and though this statement was an expression of opinion, it is not questioned that, in the circumstances disclosed, the issue as to whether what was said constituted a warranty was rightly left to the jury. See *Powell v. Chittick,* 89 Iowa 513; *McDonald Mfg. Co. v. Thomas,* 53 Iowa 558; *McGrew v. Forsythe,* 31 Iowa 179.

4. AUCTIONS AND AUCTIONEERS: warranty: no implied authority to make.

But there was no evidence whatever of the auctioneer's authority to make such a statement. Until property is struck off to the highest bidder, he is primarily the agent of the seller (*McGrew v. Forsythe,* 31 Iowa 179), but may not bind his principal, the seller, without special authority so to do. *Monte Allegre,* 9 Wheaton 616, 6 L. Ed. 175; *Court v. Snyder,* 2 Ind. App. 440, 50 Am. St. 247; *Upton v. Suffolk Co.*

*Mills,* 11 Cushing (Mass.) 586, 589; *Boyce v. Palmer,* 75 N. W. (Nebr.) 849.

As there was no evidence to show authority, we need not inquire what evidence would be sufficient to establish authority on the part of an auctioneer to warrant. The court was in error in submitting this issue to the jury.

One of the items of damage claimed by defendant is based on plaintiffs' refusal to permit him to fall plow the land. It seems that the parties orally arranged early in the fall for the leasing of the premises the following year, and the evidence in behalf of the defendant tended to show that it was agreed mutually that defendant should fall plow some of the land. It farther tends to show that he went to the premises with six horses and a gang plow for the purpose of so doing, and that plaintiffs refused to permit him so to do, and that he suffered damages because of this breach of the oral agreement. The plaintiff objected to the introduction of this evidence, for that a written lease was executed in January, 1912; and, as is said, all previous negotiations were merged therein. It is quite well established, however, that a contract may rest partly in parol and partly in writing.

5. EVIDENCE: "parol evidence" rule: contracts partly written, partly oral: when oral part provable.

It was competent for the parties to enter into an oral agreement to lease for a term not exceeding one year, and according to the evidence they so did, but subsequently entered into a written agreement concerning all matters involved except that which must have been previously carried out, and we think it is purely a case of a contract partly in parol and partly in writing. *Fudge v. Kelly,* decided at present term. The authorities seem quite generally to support this conclusion. Because of the errors pointed out, the judgment is—
*Reversed.*

Deemer, C. J., Gaynor and Salinger, JJ., concur.