W. B. ELLYSON, Appellant, v. I. R. PEDEN, Appellee.

SALES: Warranties—"Well Broke Horse"—Evidence—Sufficiency.
1  Evidence reviewed, and *held* sufficient to support a finding that, in the sale of a horse, plaintiff orally warranted the same to be "well broke".

SALES: Warranties—Rescission for Breach—Pleading—Variance.
2, 4 One pleading a breach of warranty in justification of a rescission need not prove the warranty in the exact form pleaded. If the proof substantially meets the allegation, it will be sufficient.

SALES: Warranties—Breach of Express Oral Warranty as Defense—Non-Necessity to Allege Seller's Intent. In pleading the
3  breach of an express oral warranty, as justifying a rescission, vendee need not allege that the vendor *intended* that his statements should be taken as a warranty. This follows from the established rule that, if the vendor makes a positive assertion of quality, in order to induce the sale, and vendee relied thereon, vendor's mouth is thereafter closed to say he did not "intend" to warrant.

SALES: Warranties—Rescission for Breach—Pleading—Variance.
2, 4

*Appeal from Cedar District Court.*—MILO P. SMITH, Judge.

FRIDAY, DECEMBER 17, 1915.

ACTION at law upon a promissory note given for the purchase price of a horse. Defendant pleaded a breach of warranty in the sale of the animal. He also pleaded a rescission of the contract, because of the breach of warranty. He further pleaded false and fraudulent representations of the animal, and averred that he rescinded the sale because thereof. The case was submitted to the jury on the issue of breach of warranty alone, and a verdict for the defendant was returned by the jury, upon which judgment was rendered, and plaintiff appeals.—*Affirmed.*

*Henry Negus, Hamiel & Mather,* for appellant.

*J. C. France,* for appellee.

DEEMER, C. J.—I. The animal in question was sold at public sale by an auctioneer, and it is conceded that, when she was taken into the ring, the auctioneer announced, in substance, that she was "sound and well broke". Plaintiff, hearing the announcement, immediately stepped forward, and said, "No, she is not sound, she has got that wire mark," pointing it out. What further he said at this time is a matter somewhat in dispute. Plaintiff testified that he said: "I had worked her and turned her out. I worked her the summer of 1910." He also said that he would not sell the animal as she was announced by the auctioneer. Others testified, in substance, that plaintiff interrupted the auctioneer, saying, "No, she is not sound, she has a wire mark. We worked her and turned her out. She has run out for some time. Will sell her as a green broke animal", and that he would not guarantee her. Whatever the correct version of the affair, defendant testified that he met plaintiff at another sale, a few

1. SALES: warranties: "well broke horse": evidence: sufficiency.

days before plaintiff had his sale, and told plaintiff that he was looking for a horse, and that plaintiff then said he had a mare that would go well with his (defendant's) sorrel mare; that, in response to a question as to whether she was sound or not, plaintiff said she was not; that she had a wire mark; but that they had worked her everywhere and turned her out. This is what led him (defendant) to attend plaintiff's sale. Defendant further testified as to what was said by plaintiff at the time the auctioneer made his announcement, as follows:

" 'No, she is not sound, she has got that wire mark.' He says, 'We hitched her up and worked her, we worked her everywheres'; and then he says, 'We turned her out, and she has not been hitched up for some time.' He didn't say how long. Q. Now what did you do then, after that? A. Well, after the mare was started, I went to bidding on her. I bid along until she went up to somewheres in the seventy dollars, and I thought that was high enough on all the guarantee he had to give her and I quit, stopped bidding. Q. Where was Mr. Ellyson when you stopped bidding? A. He was standing rather behind me, off a little bit to the right and a little behind me. When I quit bidding, the auctioneer looked over towards me again a time or two, and Ellyson stepped up and he says, 'That mare is all right, she will go right out into the field and work.' Q. What did you do then? A. I went ahead bidding. Q. How high did you go on her then? A. Ran her to $122.50, and she was knocked off to me. Q. When you commenced bidding again there, did you rely upon what Mr. Ellyson said to you at that time? A. I certainly did. Q. Would you have bid on her again after you stopped as you have stated if he hadn't made that statement? A. No, sir, I would not. Q. Did you believe the statement to be true that he made to you? A. I certainly believed it, or I wouldn't have bid any more."

After purchasing the animal, defendant took her home and, after two trials at hitching her up and making her work,

was unsuccessful, and he returned the mare within a week after his purchase and left her in plaintiff's pasture, where she remained until the present. Defendant afterwards qualified his statement by saying that plaintiff stated that "the mare was not extra well broke, that she was fairly well broke". Other witnesses testified that plaintiff said he would sell the animal as a "green broke" one; that she had been worked and that they had turned her out and would sell her as a "green broke" animal; but these witnesses also said that thereafter, plaintiff announced that the mare was all right, and would go right out in the field and work. All say that, after making this or a similar statement, which was during a lull in the sale, the bidding was immediately renewed.

The plaintiff's version of the affair, we have already given; and, according to some of his witnesses, the statement was that he (plaintiff) "had broke the animal the spring before and worked her and turned her out, and that he would sell her as a 'green broke' animal"; but these witnesses did not hear or testify to any subsequent declarations by plaintiff after the one made in response to the auctioneer's statement, and plaintiff himself testified that he made but the one statement. The question as to what was said by plaintiff, both before and during the sale, was manifestly for a jury, and the court gave the following instructions with reference thereto:

"No particular form of words are necessary to constitute a 'warranty', but any statement or declaration by the seller distinctly representing or affirming the condition or quality of the article or thing sold at the time of the negotiations for the sale, which are intended, and from which the purchaser at the time had reasonable grounds to suppose and believe were intended by the seller to effectuate the sale; that the purchaser did in fact so believe in making the purchase, and relied upon them, and in the truth of them, and which were operative in effecting the sale, is a warranty. .

"The mere opinion or praise of the property sold, or an

affirmation of its soundness or quality when exposed for inspection or sale does not of itself constitute a warranty; or if the purchaser relied on his judgment, and not on the statements of the seller, and was determined to make the purchase without such representations, in such case there is no warranty.

"Instruction 4—If the defendant has established by a preponderance of the evidence the fact that the plaintiff, at the time of and just before the sale of the mare in question, stated to persons there assembled for the purpose of bidding on the mare that the mare was well broken and was a good, gentle mare and would work any place, which statements plaintiff intended, and from which defendant had reasonable grounds to believe the plaintiff intended, thereby to effectuate a sale of the mare as being well broken to work any place, and he did so believe them and relied thereon, and upon the truth of the statements; and you find that such representations were operative in making the sale; and you further find that in fact said mare was not well broken and was not a good worker as represented, then the defendant would have the right to rescind the contract and return the mare in a reasonable time after discovering that she was not as represented, and demand his note.

"Instruction 5—But if you believe from the evidence that at the time of the sale, that a fair and reasonable construction to be placed on the language used by the plaintiff was that he did not intend to warrant the mare as being well broken and good to work any place; nor intended the defendant to believe that she was well broken and would work any place and thus induce him to buy the animal; or if you believed the mare was gentle and quiet and well broken and sound for an animal of her age, or you believe that the plaintiff, in what he said at the time of the sale, did not intend to represent the mare as well broken and good to work in order to effect a sale, then there was no direct or implied warranty of the mare as a good quiet worker, which has been breached

and the defendant has not sustained his defense and your verdict should be for the plaintiff.

"Instruction 6—Where the question is as to whether certain language used by the seller of the property was understood between the parties as constituting a warranty or guaranty, the seller's intentions must be drawn from the language used, and all the facts and circumstances given in evidence relating to or bearing on that point. This rule is applicable in this case in determining the intention of the plaintiff in the use of the language you find he did use, at the time of the sale of this mare. If, in accordance with the rule, you believe he meant to invest the animal with the qualities of a good work horse, well broken, that would constitute a warranty, but if you do not believe he so intended, then there is no warranty and there is no merit in the defendant's defense to the note."

These instructions are all challenged, although several of them are, in substance, the same as those asked by plaintiff.

II. The chief complaints made are: (1) that the testimony was insufficient to justify a finding that the animal was warranted; (2) that the proof does not correspond with the allegations of the answer setting up the warranty; (3) that the answer does not allege, nor do the instructions require, that defendant prove that the statements made by plaintiff were with intent on the part of the seller that they should be treated as a warranty and be acted upon by the buyer.

We think the testimony sufficient to show a warranty of the quality of the animal, and that there is no material departure in the proofs from the allegations of the answer 2. SALES: warran- pleading the warranty. Defendant was not ties; rescission for breach: required to prove the exact language, and all pleading: variance. that he need show was that it was in substance the same as the language charged. It is true that the answer does not charge an intent on the part of the plaintiff that his

statements should be taken as a warranty; but, as this answer

**3. SALES: warranties: breach of express oral warranty as defense: non-necessity to allege seller's intent.**

pleads an express warranty in parol, it was not necessary to allege such intent. *Hughes v. Funston,* 23 Iowa 257; *Powell v. Chittick,* 89 Iowa 513. Defendant did allege that he relied upon the warranty in making the purchase, and the answer was not vulnerable to a demurrer. *Ellis v. Barkley,* 160 Iowa 658; *Zimmerman v. Brannon,* 103 Iowa 144; *Latham v. Shipley,* 86 Iowa 543; *Tewkesbury v. Bennett,* 31 Iowa 83. The question of the seller's intent was submitted by the court to the jury and proper differentiation made between a warranty and mere dealers' talk, and plaintiff has no reason to complain thereof. We find no error in the instructions.

III. Certain rulings on testimony are complained of. They are manifestly right and, as they involve no new questions, we need not further consider them.

IV. As already intimated, there was no defect in pleadings; hence plaintiff's motion in arrest of judgment is without merit. Plaintiff assumes that defendant was required to prove

**4. SALES: warranties: rescission for breach: pleading: variance.**

each and every allegation and statement alleged by him to have constituted the warranty; but this is not true. He need only prove enough thereof to constitute a warranty, and failure to prove all he alleged in this connection does not constitute a variance.

Appellant's contention that all the record discloses is simply dealers' talk, which could not in law amount to a warranty, is manifestly unsound. Whether or not there was a warranty was properly submitted to a jury, and plaintiff must be content with its verdict.

What we have already said disposes of every proposition relied upon and, as we find no error, the judgment must be and it is—*Affirmed.*

WEAVER, EVANS and PRESTON, JJ., concur.