BENEFICIAL FINANCE COMPANY OF WATERLOO, Appellee,

v.

James J. LAMOS and Nancy L. Lamos, Appellants.

No. 53928.

Supreme Court of Iowa.

Sept. 2, 1970.

Robert C. Oberbillig, Des Moines, and Donald H. Canning, Waterloo, for appellants.

Jones, Hoffmann & Davison, Des Moines, and E. D. McCoy, Waterloo, for appellee.

MASON, Justice.

James J. Lamos and his wife Nancy L. appeal from an adverse judgment rendered in a law action tried to the court. Plain-

tiff filed petition in the Waterloo Municipal Court alleging as a basis for recovery defendants' execution and delivery of their promissory note in writing in the principal amount of $500, plaintiff's ownership of the note and defendants' nonpayment of a balance due in the amount of $190.15. Judgment for this amount plus interest and cost was demanded. When defendants answered and filed counterclaim seeking damages in excess of the jurisdiction of the court for mental anguish, malicious harassment and invasion of their privacy, the case was transferred to the Black Hawk District Court. Rule 364, Rules of Civil Procedure.

The trial court awarded plaintiff judgment and dismissed defendants' counterclaim seeking $15,000 for credit harassment.

In two of seven errors assigned defendants contend the court abused its discretion in denying a jury trial and overruling objections to plaintiff's Certificate of Readiness. The remaining five involve the court's findings.

I. November 27, 1963 Lamos and his wife borrowed $500 from Beneficial Finance Company of Waterloo, a financial organization licensed at the time for small loans under chapter 536 Code, 1962 and after adoption of chapter 536A for industrial loans. They executed a promissory note payable in 24 equal monthly installments of $27.60, interest having been calculated in advance and included in the monthly payments. This note is the basis for plaintiff's action and is referred to in the pleadings and record as exhibit A. A wage assignment was taken from Mrs. Lamos since her husband was self-employed.

Payments on the note were made with some interruption through February 1965. May 7, 1965 Mr. Lamos filed petition in bankruptcy listing the obligation owed plaintiff. At the time, $301.98 was owed on the note. His discharge was filed May 3, 1966. Mrs. Lamos was not a party to the bankruptcy proceedings.

In May 1965 plaintiff obtained Mrs. Lamos's paycheck by virtue of the assignment. In an effort to get his wife's paycheck released Mr. Lamos went to plaintiff's office May 22. As a result, the amount of her check less one or two payments was returned to the husband. Lamos then executed a separate promise to pay the unpaid balance of $301.98 with interest from March 1, 1965 but was not given a copy of this agreement. The instrument is referred to in the record as exhibit B.

When he signed the reaffirmation agreement and again in December Lamos and plaintiff's office manager negotiated an oral agreement for Lamos to pay $12 a month instead of $27.60 as provided in the original note. He continued to make payments until July 19, 1968.

Plaintiff's records indicate Lamos had paid a total of $332 since the bankruptcy. He contends this amount should have been applied in reduction of principal since his oral agreement was for the payment of principal only and no interest.

Other facts will be mentioned as necessary in considering defendants' contentions.

II. Defendants argue the court abused its discretion in denying a substantive right, the right of trial by jury, in overruling their motion for jury trial. They contend the case should be remanded, if for no other reason, to enable them to have a jury trial on issues presented. We do not agree.

Defendants had demanded a jury trial as part of the caption of answer and counterclaim and repeated the demand as the last sentence in the prayer in Division III of its counterclaim.

December 2, 1968 a "Court Call" was published by the Black Hawk Clerk listing jury and nonjury cases to be assigned for trial that month. The present case was not included. December 13 defendants received a copy of a written order setting the case for December 17 as a nonjury matter.

That day defendants filed motion for jury trial and additional time to prepare for trial. The court overruled motion for jury trial but set it as a nonjury trial for December 30.

Rule 177, R.C.P., provides in part:

"(a) Jury trial is waived if not demanded according to this rule; * * *.

"(b) A party desiring jury trial of an issue must make written demand therefor by filing a separate instrument clearly designating such demand not later than ten days after the last pleading directed to that issue. A copy thereof must be filed for each adverse party appearing and it shall be mailed or delivered by the clerk in the manner provided by rule 82.

" * * * (d) Notwithstanding the failure of a party to demand a jury in an action in which such demand might have been made of right, the court, in its discretion on motion and for good cause shown, but not ex parte, and upon such terms as the court prescribes, may order a trial by jury of any or all issues."

Defendants concede they did not comply with subparagraph (b) of this rule by filing a separate instrument in making their written demand. However, they maintain the fact their attorney was not familiar with the change made in this subparagraph in 1961 constituted the good cause necessary under subparagraph (d) for exercise of the court's discretion. Subparagraph (b) had been amended effective July 4, 1961.

A similar contention was rejected in Morris Plan Leasing Co. v. Bingham F. and Gr. Co., 259 Iowa 404, 409–410, 143 N. W.2d 404, 408–409 where demand for jury trial followed the prayer of defendant's answer. We held demand was not in compliance with the rule. Defendants do not persuade us our holding there should be overruled.

In Katcher v. Heidenwirth, 254 Iowa 454, 462, 118 N.W.2d 52, 56, this court consider-ed the words "for good cause shown" in subparagraph (d) of this rule. What was said there is appropriate here without repeating.

We find no abuse of discretion here.

■ III. Defendants further contend the trial court abused its discretion November 12 in overruling their objections to plaintiff's Certificate of Readiness.

Plaintiff's petition was filed in September 1968. October 17 defendant answered and filed counterclaim. October 21 plaintiff filed its answer and reply. The same day it filed a Certificate of Readiness certifying that: (1) issues were joined and the case was ready for trial in all respects; (2) necessary use of discovery rules had been completed and taking of depositions concluded; (3) the adverse party had had a reasonable time to obtain inspections, examinations and reports under rules 131 to 133; and (4) sufficient time had elapsed to afford the adverse party reasonable opportunity to be ready for trial. Assignment for trial by court was requested. Remaining matters certified to are not involved in this appeal.

One week later defendants filed objections to plaintiff's Certificate controverting each of these contentions and asserting pretrial conference had not been held.

Defendants argue they were denied opportunity to properly prepare their case in view of the practice in Black Hawk County and the Tenth Judicial District denying further discovery once a Certificate of Readiness has been served and becomes effective. They point out that until plaintiff's reply and answer to their counterclaim was filed October 21 it was impossible to know what issue there might be on which they might desire to exercise discovery; exhibit B, the reaffirmation signed by James Lamos May 22, 1965 attached to plaintiff's reply and answer substantially changed plaintiff's theory of Lamos' liability.

However, no showing is made in the record that under the rules of the Black Hawk District Court discovery is foreclosed when the Certificate of Readiness is filed. Defendants did not actually attempt to exercise any right of discovery. Had they at any time following filing of Certificate requested depositions or documents from plaintiff and been prohibited right to make discovery there would be a justiciable issue before us; but such is not the case.

As previously noted, trial did not commence until December 30, 1968. Defendants had ample opportunity to attempt discovery after plaintiff's Certificate of Readiness was filed.

The matter was directed to the trial court's discretion. It not being made to appear that this discretion was abused, we will not interfere.

▋ IV. As stated, defendants attack the trial court's findings in their remaining assignments of error.

In a law action tried to the court as here, our review is not de novo but only on errors assigned. Under this limited extent of review the findings of fact by the trial court have the effect of a special verdict and are equivalent to a jury verdict. If supported by substantial evidence and justified as a matter of law, the judgment will not be disturbed on appeal. Rule 344 (f) (1), R.C.P. Stated in other words, in a law action tried to the court its findings of fact having adequate evidentiary support shall not be set aside unless induced by an erroneous view of law. It follows, the rule does not preclude inquiry into the question whether, conceding the truth of a finding of fact, the trial court applied erroneous rules of law which materially affect the decision. Alsco Iowa, Inc. v. Jackson, 254 Iowa 837, 840, 118 N.W.2d 565, 567; France v. Benter, 256 Iowa 534, 536, 128 N.W.2d 268, 270. We may also interfere when such findings are undisputed or no conflicting inferences may be drawn from them.

V. Defendants contend in their third and fourth assignments the court erred in finding the November 27, 1963 obligation was enforceable even though plaintiff had not complied with either chapter 536 or 536A when it failed to furnish Lamos a copy of the agreement he signed May 22, 1965 or receipts for installments paid after its execution specifying the amount applied to interest or charges and the amount applied in reduction of principal. They argue the note is therefore void and unenforceable as an illegal contract.

Defendant did not plead such defense in the trial court.

Nevertheless on cross-examination, plaintiff's manager in May 1965 and its manager at time of trial stated it was a company policy to give a customer a receipt showing amount of payment, interest, principal, balance due and date it was received. There was no evidence in the office records that any receipts were in fact sent to defendants. Lamos testified that in all but one or two instances payments were made by check, no receipts were received although requested.

The foregoing evidence was received without objection as far as the record shows. "We have held where evidence is introduced to prove an unpleaded issue and the other party does not object to it the issue is tried by consent." Nelson v. Leaders, 258 Iowa 919, 922–923, 140 N.W.2d 921, 923–924 and citations.

Plaintiff does not challenge defendants' right to assert illegality of the note as a defense because of their failure to plead it in conformity with rule 101, R.C.P.

In these circumstances we examine defendants' two complaints urged as a basis for their contention the note is unenforceable as an illegal contract.

Their first attack is directed at plaintiff's failure to furnish defendants a copy of the May 1965 reaffirmation signed only by Mr. Lamos. It is conceded plaintiff did not deliver defendants a copy of this instru-

ment. They maintain this was a violation of Code section 536.14 which requires every licensee, under this chapter, deliver to the borrower at the time the loan is made a statement showing in clear distinct terms the lawful maximum rate or rates of interest or charges in effect, the amount and date of the loan and of its maturity. Section 536.19 provides a fine or imprisonment for violation of any provision of section 536.14.

When defendants signed the 1963 note it contained this statement, "the undersigned acknowledge receipt of a Statement in English as required by section 536.14 of the Iowa Code, 1958, as amended; * * *." This is the time the loan declared upon in plaintiff's petition was made. The May 1965 agreement by Lamos was a promise to pay the balance of $301.98 owed on the note signed by him and his wife November 1963 with interest from March 1, 1965 as expressly provided for in the agreement.

█ A promise to pay all or part of a debt discharged or dischargeable in bankruptcy proceedings begun before the promise is made is binding. Fierce v. Fleming, 205 Iowa 1281, 1283, 217 N.W. 806, 807; Jacobsen Bros. v. Burgin, 233 Iowa 207, 209–210, 8 N.W.2d 749, 750 and citations; Restatement, Contracts, section 87; 1A Corbin on Contracts, section 222; 1 Williston on Contracts, Third Ed., (Jaeger), section 158; 9 Am.Jur.2d, Bankruptcy, section 750; 17 Am.Jur.2d, Contracts, section 134; 8B C.J.S. Bankruptcy § 583a.

8B C.J.S. Bankruptcy § 583d has this statement "There is a diversity of opinion as to whether the bankrupt's new promise or the original debt forms the basis for recovery against the bankrupt. Thus it has been held that, since the new promise serves merely to revive the original debt the creditor must base his action against the bankrupt on the original obligation rather than on the new promise, and that the terms of the original obligation or engagement are the test or measure of his

recovery." Citing in support Fierce v. Fleming, supra. See also Bayliss v. Street, 51 Iowa 627, 2 N.W. 437 and Burns v. Burns, 233 Iowa 1092, 1094, 11 N.W.2d 461, 463.

In Burns v. Burns the question of the statute of limitations was involved. After referring to the quote from 8B C.J.S. Bankruptcy § 583d, this court said, "However, it is the settled rule in Iowa that the promise does not constitute a new cause of action. It is effective only to revive the original cause of action or to extend its life by tolling the statute of limitations and starting it anew. * * * [Citing authorities]. *In jurisdictions adopting this view it is said the statute does not annihilate the debt but merely suspends the remedy.* * * * [Citing authorities]." (emphasis in the original).

█ There is no logical reason why the same general principles should not apply to promises to pay made by a bankrupt. Tubbs v. McCabe, 35 Del. 327, 165 A. 336, 338.

Since the May 1965 agreement served only to revive the original debt as evidenced by defendants' November 1963 note plaintiff's failure to deliver them a copy of Mr. Lamos' new promise made May 22, 1965 did not render the note declared on unenforceable as an illegal contract.

In connection with their other complaint, defendants point out section 536.14 also requires the licensee give the borrower a plain and complete receipt of all payments made on account of any such loan at the time such payments are made specifying the amount applied to interest or charges and the amount applied to principal; provided, however, that if the interest has been precomputed the receipt need not be itemized and no receipt shall be required where payment is made by check or money order and the full amount of such check or money order is applied to the loan.

The proviso was enacted as section 11 of chapter 409 by the Sixty-first General

Assembly effective July 4, 1965. The company records indicate the first payment made by Lamos following his execution of the reaffirmation agreement was September 15, 1965.

Chapter 536 was enacted by the legislature for protection of the public doing business with small loan companies. However, the penalties for violation of section 536.14 do not include forfeiting the licensee's right to enforce the borrower's obligation. Irrespective of this fact if the court is convinced after due consideration that the illegal factor—plaintiff's failure to give defendants receipts required by the act—is of such nature that the public interest and welfare of those persons for whose protection the particular element has been declared to be illegal will be best subserved by denying plaintiff a remedy it would be its province to do so. 6A Corbin on Contracts, section 1533; 5 Williston on Contracts, Rev.Ed., section 1630A; Restatement, Contracts, section 600.

As a regulatory measure this section imposes a duty upon a licensee to deliver to its borrowers specified forms of receipt for installments paid and, as stated, section 536.19 provides a penalty for failure to comply with such requirements.

The fact a statute provides an administrative or criminal penalty for its violation is not the test for determining contractual rights of parties to a transaction involving some form of illegality. The degree of the illegal factor, extent of public harm that may be involved, and moral quality of the conduct of the parties in light of prevailing mores and standards of the community are influential factors in determining whether some judicial remedy will be granted. See Corbin on Contracts, supra, section 1534.

The November 1963 agreement was legitimate in every respect. The chapter involved does not in terms nor by implication prohibit an authorized licensee from making loans based on terms and conditions similar to those here. Considering the foregoing principles the court properly sustained validity of the agreement under this record as against defendants' attack of illegality.

VI. Defendants argue as another brief point in support of this assignment full payment is a valid defense to plaintiff's suit. They had affirmatively alleged total payment by Lamos since his discharge in bankruptcy exceeded the amount owed on the November 1963 note if no interest was to be charged. Defendants had the burden of proving this affirmative defense. Glenn v. Keedy, 248 Iowa 216, 221, 80 N.W. 2d 509, 512 and citations. We have said many times that in the absence of an admission by the adverse party, it is not often that a party having the burden of proof upon an issue establishes it as a matter of law. Naxera v. Wathan, 159 N.W.2d 513, 521 (Iowa 1968), and citations.

To sustain defendants' argument would require a finding they had established as a matter of law an agreement that plaintiff Mr. Lamos would be obligated to repay only the principal balance on the note without interest after his discharge in bankruptcy by his execution of the reaffirmation agreement. Defendants' argument cannot be sustained in the face of Lamos' express written agreement to pay the unpaid balance of $301.98 on the November 1963 note "with interest from March 1, 1965".

Undaunted defendants contend that since no rate of interest was fixed in the May 1965 promise the rate permitted by section 535.2 Code, 1966 must control in which event they had successfully established their defense of full payment. However, the original note determined the rate of interest to be charged from March 1, 1965. See Fierce v. Fleming, 205 Iowa 1281, 1283, 217 N.W. 806, 807. When interest is thus deducted from Lamos' payments there is substantial evidence to support the trial court's finding that defend-

ants were obligated to pay $190.15 with interest at the rate of 5 percent per annum from the date of its judgment.

Chapter 536A which defendants contend plaintiff also violated did not become effective until May 27, 1965 on publication. The provisions of that chapter do not help defendants here.

VII. In another assignment defendants assert the trial court erred in failing to find Nancy Lamos had been discharged by alteration of the original obligation without her consent or approval.

This is based on the contention that Mr. Lamos' promise in May 1965 created a new agreement between the husband and the loan company for payment of the balance owed and acceptance of this new agreement discharged defendant from liability on the original obligation.

In light of our conclusion in Division V, supra, that Lamos' 1965 promise served merely to revive the original debt and does not constitute a new cause of action, it follows the reaffirmation agreement did not cancel the debt created by the 1963 note nor substituted in its place a new obligation.

The fact plaintiff obtained a wage assignment from Mrs. Lamos at the time of the loan is evidence its agents were relying on her signature in making the loan. Her liability and that of her husband accrued at the same time. She was a co-maker. State Bank of Waverly v. McCoy, 232 Iowa 456, 463, 3 N.W.2d 141, 144.

The Bankruptcy Act, section 16, 11 U.S. C.A., section 34 provides: "The liability of a person who is a co-debtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt."

Referring to this section the court in Polk Chevrolet, Inc. v. Vicaro, 162 So.2d 761, 766 (La.App.1964) said, " * * * [I]t is well established law that the dis-

charge in bankruptcy of the maker of a negotiable note does not release a co-maker." See also Molloy v. Molloy, 43 Ohio App. 49, 182 N.E. 660, 661.

The court did not err in awarding judgment against Mrs. Lamos as her husband's 1965 promise did not have the effect of discharging her obligation which was unaltered by the bankruptcy.

It should be obvious that in determining this phase of defendants' appeal we have considered plaintiff's alleged failure to give copies of specified receipts only as it bears on the validity of the note sued on.

VIII. In their two remaining assignments defendants challenge the court's dismissal of their counterclaim.

In Division I defendants assert a claim for refund of the alleged overpayment on the November 1963 note. We have disposed of this contention earlier by determining defendants had not established an oral agreement Mr. Lamos was to pay only the principal balance on the November 1963 note without interest.

In the second and third divisions of their counterclaim defendants seek recovery for mental pain and suffering sustained from humiliation and embarrassment caused by credit harassment and invasion of their privacy by repeated telephone calls from plaintiff's employees to Mrs. Lamos at her place of employment concerning unpaid installments due on defendants' note.

Defendants' theory of recovery is not predicated upon negligence or any claim of physical injury or attempt to commit a physical assault of any kind. They allege as a basis for their cause of action that the acts of plaintiff's employees were willful and malicious for the sole purpose of collecting money and caused defendants mental pain and suffering.

In written argument defendants recognize the rule set out in Division IV, supra, that in a law action tried to the court its finding of fact having adequate evidentiary

support shall not be set aside unless induced by an erroneous view of law. Nevertheless, they maintain the trial court erred on a question of law in arriving at its conclusion defendants' counterclaim should be dismissed. Specifically defendants argue this conclusion is based on an erroneous finding the evidence did not constitute such willful and unreasonable course of conduct as to be tortious on plaintiff's part which would entitle defendants to recover under the principle enunciated in Barnett v. Collection Service Co., 214 Iowa 1303, 1312, 242 N.W. 25, 28.

In Barnett this court said, "The rule seems to be well established that, where the act is willful or malicious, as distinguished from being merely negligent, recovery may be had for mental pain, though no physical injury results. In such a case the door to recovery should be opened but narrowly and with due caution. A creditor or his agent has a right to urge payment of a just debt and to threaten to resort to proper legal procedure to enforce such payment. In this case the jury could well find that appellants exceeded their legal rights, and that they *wilfully* and *intentionally* sought to produce mental pain and anguish in the appellee, and that the natural result of said acts was to produce such mental pain and anguish." (emphasis in the original).

Twenty-one years later we said in Curnett v. Wolf, 244 Iowa 683, 688, 57 N.W.2d 915, 918 "we think the rule as announced in the Barnett case represents the modern and correct rule * * *."

This theory of recovery is also dealt with in Blakeley v. Estate of Shortal, 236 Iowa 787, 791, 20 N.W.2d 28, 31 and discussed at length in Prosser on Torts, Third Ed., section 11 pages 47–54. Restatement, Second, Torts, section 46 now provides:

"Outrageous Conduct Causing Severe Emotional Distress

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

"(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

"(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

"(b) to any other person who is present at the time, if such distress results in bodily harm."

The reporter's notes to this section indicate illustration seven is taken from Barnett v. Collection Service Co., supra, and illustrations 15 and 16 are based on Blakeley v. Estate of Shortal. In the appendix to this section the reporter's notes has this information:

"This Section was revised, and the Comments rewritten, in the 1948 Supplement to the Restatements. It has again been revised, and the Comments rewritten, to keep pace with the continued development of the law."

We summarize the evidence in connection with defendants' counterclaim.

Shortly after defendants stopped paying on the note plaintiff's employees started telephoning them about the account. After Mr. Lamos informed plaintiff he was employed by a Waterloo company engaged in classified work and personal calls were not permitted, no further calls were made to him at work.

Some incidents giving rise to defendants' counterclaim occurred between August 16 and September 18 when, according to plaintiff's records, its employees made 13 telephone calls for Mrs. Lamos at the hospital where she was employed as a surgical nurse. Some reached Mrs. Lamos during working hours necessitating her being called from the operating room. Others were taken by the surgical secretary who

took all calls coming into surgery. Still others were taken by the assistant head nurse in surgery and some by the supervisor of surgery.

Mrs. Lamos testified the telephone calls upset her, she would be hard to get along with, cried, and took it out on the children and her husband. In fact, she and Mr. Lamos had discussed the possibility of separation because of the telephone calls and sought the counseling of a social worker.

The surgical secretary said the calls she received were from persons identifying themselves. When Mrs. Lamos was in surgery the message was later relayed to her. When not in the operating room Mrs. Lamos would answer the calls. The witness said if she was paying attention she would have been able to hear any conversation because of the phone's location. Calls which came periodically seemed to disturb Mrs. Lamos greatly.

The assistant head nurse recalled one occasion after July 1968 when Mrs. Lamos became disturbed concerning some business. The assistant felt Mrs. Lamos could not function as a surgical nurse and made arrangements to send her home. She recalled other instances when Mrs. Lamos appeared to be disturbed.

The supervisor of surgery told of the hospital rule discouraging personal telephone calls to prevent interruptions in surgery. She recalled receiving a call for Mrs. Lamos in September 1968, the caller identified himself and the company he was representing and advised the supervisor that if he couldn't reach Mrs. Lamos he would go to the administrator with the matter.

Mr. Lamos testified he told plaintiff's manager in early June to stop calling his wife at work as the calls were upsetting her and making it difficult. He pointed out she was a surgical nurse and wasn't free to take calls because of hospital rules. If they were to continue his wife might lose her job.

Lamos said the phone calls to his wife caused him to become upset and irritable with the children. These periods of disturbance would normally last two or three days after each telephone call. At one time he was called to school because the teacher felt their oldest son was suffering from parental neglect. In fact, he and his wife had discussed the possibility of divorce because of the pressure of their indebtedness. After the last call in September the family relationships were better.

A social worker called as defendants' witness testified in response to a hypothetical question that such a pattern of telephone calls under the circumstances shown in the evidence and having the effect described on Mrs. Lamos would be a major factor in bringing a family to seek divorce.

Plaintiff's present office manager testified "Mr. Lamos kept telling us that it was his agreement not to pay interest, we kept telling Mr. Lamos that it was his agreement to pay interest." Other employees disputed the nature and number of calls and specifically denied the threat to call the hospital administrator. The company offered other evidence in an effort to de-emphasize the telephone calls as a cause for Mrs. Lamos' emotional disturbance.

Defendants maintain this record supports their allegation that acts of plaintiff's employees were willful and malicious. They argue their contention there was no obligation owing by them and if there was by the husband there was none as to the wife are factors which when resolved in their favor could materially alter the trial court's decision plaintiff's conduct was not so willful and unreasonable as to be tortious.

In this connection we point out defendants do not claim any evidence material or relevant to their contention was erroneously rejected by the court's rulings.

They say the legitimacy and collectibility of the debt is of prime importance in determining reasonableness of the collection activity; the character of the obligation,

whether it is undisputed or not, does reflect and taint the reasonableness of practices used to collect it. If there is an undisputed amount owed and the debtor refuses to pay, tactics used to collect might well be more drastic than those permissible where no debt is owed or its existence is disputed.

Of course, reasonableness of the dispute would have some bearing on the issue.

In discussing defendants' assignments of error attacking the judgment awarded plaintiff on the November 1963 note, we have gone to considerable length to explain why the trial court correctly determined an obligation was still owing and that both Mr. and Mrs. Lamos were liable therefor.

This is fatal to defendants' contention that the willfulness or maliciousness of plaintiff's acts is to be determined by a standard which might be applicable to a situation where it is established no obligation was owing or there is convincing evidence of a good faith dispute as to the amount due from the debtors.

Defendants' contention that there was a dispute as to the balance owed was rejected by the court's finding defendants did not establish an oral agreement to repay only principal without interest. Inherent in this is a determination that exhibit B, the reaffirmation agreement, was complete on its face when Mr. Lamos signed and that the rate of interest was determined by the original note. In a law action tried to the court we will not weigh the evidence or pass upon the credibility of witnesses. Shirk Oil Co. v. Linsley, 166 N.W.2d 789, 790 (Iowa 1969).

Defendants had the burden of proving as one of the propositions neces-sary for recovery on their counterclaim that the acts of plaintiff's employees were willful or malicious. Barnett v. Collection Service Co., 214 Iowa 1303, 1313, 242 N.W. 25, 28.

In this connection the phrase "burden of proof" is used to express the idea that a named litigant must in the end establish a given proposition in order to succeed. Henschel v. Hawkeye-Security Insurance Company, 178 N.W.2d 409 (Iowa 1970) and authorities cited.

Under the record although there is sufficient evidence to make this issue a question of fact for the trier it is not adequate to require a finding as a matter of law defendants had established plaintiff's acts were of this character.

The court concluded "the conduct of plaintiff's employees in the case falls short of defendant's employees in the Barnett case [Barnett v. Collection Service Co., supra]." In other words, the court, as the trier of fact, determined defendants had not successfully sustained their burden of persuasion that plaintiff's acts were malicious or willful.

It was not induced by an erroneous view of law.

IX. Defendants in effect contend the evidence compels a finding as a matter of law acts of plaintiff's employees in calling Mrs. Lamos at her place of employment constituted an invasion of defendants' right of privacy. This contention is without merit. Yoder v. Smith, 253 Iowa 505, 112 N.W.2d 862.

The case is therefore

Affirmed.

All Justices concur except BECKER, J., who dissents.