Albert EIHAUSEN and Ethel J. Eihausen, Appellants,

v.

CONSUMERS, INC., Appellee.

No. 55495.

Supreme Court of Iowa.

July 3, 1973.

James, Greer, Hoover, Nelson & Bertell, Spencer, for appellants.

Jack H. Bedell, Spirit Lake, and Bennett A. Webster of Gamble, Riepe, Martin, Webster & Fletcher, Des Moines, for appellee.

Submitted to MOORE, C. J., and MASON, REES, UHLENHOPP and McCORMICK, JJ.

MASON, Justice.

Plaintiffs, Albert Eihausen and his wife Ethel, instituted a law action for damages from defendant, Consumers, Inc., for an alleged breach of contract growing out of the construction of plaintiffs' house by defendant. They appeal from the trial court's judgment determining the damages to be awarded them.

October 9, 1967, the Eihausens and Dewey Olson, defendant's authorized representative and agent, executed a written contract for the construction of a house on plaintiffs' farm by defendant for a total cost of $26,151.97. Although no plans were attached to the contract, it was agreed defendant would construct a home for plaintiffs copying the plan of a "Dingle home" with certain modifications involving a fall-out bomb shelter and breezeway, brick veneer walls, double-hung windows, hip roof style and rearranging of closets and baths. However, neither party strictly adhered to the agreement and several oral alterations and additions were requested by plaintiffs during the course of the building. Some of the changes made on the job were on direct orders from plaintiffs without clearing with Olson.

In its judgment the trial court noted, and there is substantial support for the view, that "little, if any, attention was given to the written agreement by either party after it was signed. Other than building the house on the right farm, there is little similarity between the terms of the 'contract' and what the parties did."

Construction of the home commenced October 19. It was mutually agreed plaintiffs would perform certain portions of the inside work, including painting, plastering, electrical work and insulation. They were to be allowed a credit on the total contract price for these items of $3759.57.

November 15, as work proceeded on construction of the new home, plaintiffs paid defendant $10,000 at Olson's request. At this time the basement was walled-up but the roof was not installed and there was snow on the sub-floor of the house.

January 3, 1968, Olson came to the Eihausen home requesting further payment on the contract. He had computed the costs of changes and extras and had prepared an itemized statement or recap of figures, identified as exhibit "M," to advise plaintiffs of the total unpaid balance it would require to finish the house. Following an explanation and examination of exhibit "M," plaintiffs paid the second $10,000. This left a balance of $4955.59 which represented a total increase of $2563.19 above the original total cost figure of $26,151.97.

Mr. Eihausen testified: "We agreed to pay Consumers $4955.59 in addition·to the $20,000 we had already paid them if Consumers finished the contract, paid off the sub-contractors, and finished the house."

And Mrs. Eihausen stated: "I think my husband and Dewey [Olson] sat down, and after the payment of the $20,000, and agreed that the cost of finishing the house would be $4955.59."

After Olson left Eihausen's farm with the second $10,000 check, plaintiffs stopped payment on the check the following day, believing they had paid too much in view of the progress of the work. However, plaintiffs paid defendant $8000 on the contract January 16 and another $2000 on February 1, leaving the balance previously stated. For reasons not material to this appeal, defendant did not complete the construction of the home.

After the home was completed by third parties at an additional cost of $11,581.55, plaintiffs initiated this law action to recover their damages.

The court found plaintiffs were required to expend $11,581.55 to complete the house. Included in this amount was a $4450 claim

of Burdette Hansen, a bricklayer who had filed a mechanic's lien against plaintiffs' property.

The court also found that, "Olson had computed the cost of changes and extras and had prepared Exhibit 'M' to advise plaintiffs of the total unpaid balance it would require to finish the house. Following this explanation and examination of Exhibit 'M' plaintiffs. paid the second $10,000.00 and agreed that the balance due was $4,955.59.

"\* \* \*

"Defendant is entitled to off-set the account stated of $4955.59 but is liable for interest of the remaining damages."

The court then set forth a recapitulation in the following manner showing how it arrived at the amount of the judgment awarded plaintiffs:

| | |
|---|---|
| Total amount necessary to complete house | $11,581.55 |
| Less account stated | −4,955.59 |
| Damages | $ 6,625.96 |
| Interest for three years at 5 percent | 993.90 |
| Total including interest | $ 7,619.86 |

Defendant moved to reduce the judgment by the amount representing Hansen's mechanic's lien and interest. Following a hearing the court sustained the motion upon condition defendant comply with the provisions of section 572.15, The Code, 1971, by filing a bond as provided in this section to discharge the mechanic's lien.

The judgment was thus reduced by $4450 plus interest for three years at five percent or $667.50 for a total of $5117.50.

I. Plaintiffs rely on only one assignment of error for reversal, asserting the court erred in its conclusion the balance due on the contract modified by oral agreement was an "account stated." Plaintiffs, in effect, contend the judgment awarded them should be increased by the amount of the account stated, $4955.59 plus interest.

In a law action tried to the court as here, our review is not de novo but only on errors assigned. Under this limited extent of review the findings of fact by the trial court have the effect of a special verdict and are equivalent to a jury verdict. If supported by substantial evidence and justified as a matter of law, the judgment will not be disturbed on appeal. Rule 344(f)(1), Rules of Civil Procedure. Stated in other words, in a law action tried to the court its findings of fact having adequate evidentiary support shall not be set aside unless induced by an erroneous view of law. It follows, the rule does not preclude inquiry into the question whether, conceding the truth of a finding of fact, the trial court applied erroneous rules of law which materially affect the decision. We may also interfere when such findings are undisputed or no conflicting inferences may be drawn from them. Beneficial Finance Company of Waterloo v. Lamos, 179 N.W.2d 573, 578 (Iowa 1970).

In Conrad v. Dorweiler, 189 N.W.2d 537, 540–541 (Iowa 1971), this court had the occasion to discuss the measures of damage for breach of a construction contract. We quote from that opinion:

"\* \* \* The material portion of \* \* \* [the] rule [set out in Restatement, Contracts, section 346(1), page 572] is as follows:

" '(1) For a breach by one who has contracted to construct a specified product, the other party can get judgment for compensatory damages for all unavoidable harm that the builder had reason to foresee when the contract was made, less such part of the contract price as has not been paid and is not still payable, determined as follows:

" '(a) For defective or unfinished construction he can get judgment for either

" '(i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste; or

" '(ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in accordance with the contract would involve unreasonable economic waste.'

" * * *

"In several * * * cases we have approved the first of the two alternative rules quoted above from the Restatement. * * * [citing authorities] In each of these we held the party left with an uncompleted contract could secure its completion and recover from the wrongdoer the reasonable cost of finishing the work in excess of the original contract price."

The measure of damages set forth in the first alternate rule quoted from the Restatement is articulated in 5 Corbin on Contracts, section 1089 in this manner: " * * * [F]or a total breach by refusal and failure to complete the work, the injured party can get a judgment for damages measured by the reasonable cost of * * * completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste."

The same principle is stated in 13 Am. Jur.2d, Building, Etc. Contracts, section 78:

"Whether considered from the viewpoint of what a contractor is entitled to recover or from that of what the owner is entitled to deduct because the builder has abandoned his contract or has breached it by failing to complete the structure which he undertook to build, most of the courts have stated or held that under such circumstances the measure of damages is the amount above the contract price that it costs the owner to complete the structure in accordance with the terms of the contract."

To the same effect see 17A C.J.S. Contracts §§ 368, 523(2); 25 C.J.S. Damages, § 75; and Annot., 76 A.L.R.2d 805, 830.

Guided by the foregoing statements of law the trial court in the process of fixing plaintiffs' damage proceeded to first determine the reasonable amount necessary to complete construction of the house in accordance with the contract as modified by alternations ordered by plaintiffs. It found this amount to be $11,581.55. We do not understand plaintiffs to challenge this finding nor do they question the court's order deducting the amount of Hansen's mechanic's lien from the court's final award.

In order to find how much plaintiffs' cost in completing construction of the house exceeded the sum due defendant had it completed the original contract with the alterations involved, it was necessary to determine the amount which would have been due defendant for such completion. On the basis of exhibit "M" and testimony of Olson and Eihausen the court found this amount to be $4955.59 which it designated as an "account stated" in its judgment. The court then applied the $4955.59 as an offset against plaintiffs' cost of construction and awarded judgment for the difference.

It is the use of the term "account stated" which gives rise to plaintiffs' appeal. In support of their position plaintiffs argue as brief points: (1) the burden was on defendant to prove existence of an account stated by a preponderance of the evidence; (2) the essential elements necessary to establish an account stated are (a) that there is a balance due, (b) the amount of that balance, (c) from whom the balance is due, and (d) a promise, express or implied, for the payment of such balance; (3) an account stated must be based on past transactions constituting a preexisting debt and cannot be based on a possibility of liability at some future date; and (4) an account cannot become an account stated if it is payable upon a contingency.

It is our view that it is not necessary to decide whether exhibit "M" qualifies as an "account stated." But see, 6 Corbin on

Contracts, sections 1303–1315; 15 Williston on Contracts, Third Ed. (Jaeger) sections 1862–1864; Calamari and Perillo on Contracts, section 346. The case before us is not based on an alleged account stated nor is exhibit "M" being used as a bar to an action on the original contract. If such were the case, the question whether exhibit "M" is an account stated could be important.

There is no dispute alterations were ordered by plaintiffs during the course of construction. No one questions the fact such alterations resulted in a higher total cost construction. At the time Olson called at Eihausen's home in January 1968 the increased cost resulting from these alterations had not been determined. In other words, the question was how much it was going to cost to complete construction if no further changes were made.

It had to be obvious to plaintiffs under the original contract without any changes or alterations that after credit for the two payments of $10,000 and the allowance of $3759.57 representing work and materials to be furnished by plaintiffs, there was going to be a balance of $2392.40 due under their contract with defendant for completing the house. They also had to realize the total construction cost would increase by reason of changes made at their directions.

■ Olson had determined what this increased cost would be. He or someone connected with defendant, had prepared a statement (exhibit "M") showing this cost. The exhibit was relevant as tending to make certain the cost of completing the construction. There is substantial evidence to support the court's finding plaintiffs agreed the amount of $4955.59 was a reasonable cost of finishing the house.

Plaintiffs argue their agreement to pay defendant the additional $4955.59 was contingent upon defendant finishing construction of their home; since defendant never returned, plaintiffs had no obligation to pay the additional amount, either under the agreement or as an account stated. Plaintiffs' argument misses the point. The question before the court was not under what contingencies plaintiffs had agreed to pay the additional $4955.59 nor, for that matter, whether they ever agreed to pay such amount, but rather how much did plaintiffs' cost in completing construction of the house exceed the original contract price as modified by alterations. The answer to this question was essential to enable the court to apply the correct measure of damages in determining plaintiffs' recovery which in this case was the measure set forth in the first alternate rule quoted earlier in this opinion from Restatement, Contracts, section 346(1).

There is substantial evidence in the record to support the trial court's finding that it would have cost plaintiff $4955.59 to complete construction under the original contract as modified.

The court applied the correct measure of damages in arriving at the amount to be awarded plaintiffs. The fact it saw fit to label exhibit "M" as an "account stated" cannot serve as a basis for reversal.

The case is therefore

Affirmed.