**WATER DEVELOPMENT COMPANY, Appellee,**

v.

**James LANKFORD, Appellant.**

**No. 92–870.**

Supreme Court of Iowa.

Oct. 20, 1993.

Timothy McCarthy II of Cook, Gotsdiner, McEnroe & McCarthy, Des Moines, for appellant.

Thomas T. Tarbox of Smith, Schneider, Stiles, Wimer, Hudson, Serangeli, Robinson, Mallaney, Shindler, Scalise & Sandre, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

SNELL, Justice.

This is a breach of contract case where the subject matter is the delivery of potable water to a household. The trial court held that defendant, James Lankford, breached a fifty-year contract to purchase water from plaintiff, Water Development Company, thirty-seven years of which remained. Judgment for $3197.70 was entered against defendant. On appeal by defendant, we affirm.

Water Development Company (WDC) is a public water supply utility furnishing water to several suburban or outlying areas around Des Moines in Polk, Dallas, and Warren Counties. It is primarily a family-owned corporation existing since 1961. In addition to supplying water, it operates a sewage treatment plant and furnishes water for other entities.

The water systems are generally located outside of the city limits of Des Moines. Six of the water systems are in Polk County. The southwest Polk system involved here obtains its water from two alluvial wells or sand and gravel wells alongside the Raccoon River across from the city of West Des Moines. The wells and water treatment plant are on state property in Walnut Woods State Park. There water is aerated, filtered for iron and manganese, and chlorinated. Then it is pumped through eight inch pipelines five or six miles to the individual homes on the system.

James Lankford owns a home at 5183 Southwest 63rd Street, Des Moines, Iowa. He and his wife acquired the property from his wife's grandmother at which time the property was supplied with water by defendant, WDC. A portion of the water main was actually installed by Lankford's father-in-law, Dave Moffitt. Moffitt owned an original portion of the water system that is now operated by WDC. Bloomfield Water Company owned another original portion of the water system and later sold it to WDC. WDC purchased the portion of the system owned by Bloomfield Water Company at a time when Bloomfield Water Company was experiencing financial difficulties. The purchase was known by and encouraged by the Polk County Board of Supervisors.

James Lankford is a thirty-four-year-old college educated man. In 1981, Lankford signed a contract with WDC to supply him with household water for fifty years. The value of the thirty-seven remaining years on the contract was calculated to be $3197.70.

In 1989, the city of Des Moines annexed the land area through which WDC operates

its southwest Polk water system supplying water to the Lankfords. The Des Moines Water Works supplies water to the majority of homes in Des Moines. It initially informed Lankford that it would be his water supplier by purchasing the water mains from WDC. When negotiations for this transfer of ownership collapsed, the Des Moines Water Works constructed a parallel water line system and solicited Lankford's business. Lankford agreed to a switch of his water supply service to the Des Moines Water Works and signed a contract for that service.

Lankford's theories of defense and issues raised on appeal are as follows. WDC cannot enforce its contract because it is illegal. It is illegal because it failed to get permits for its water mains from the State Department of Transportation. Lankford's second issue is that the contract is unenforceable because its purpose has been frustrated. This claim is based on the assumption by Lankford that his principal purpose in entering into the fifty-year contract with WDC was to get water that could only be supplied by the company. Lankford argues that when another source of water became available from the Des Moines Water Works, the purpose of the contract was frustrated through no fault of his own.

Our scope of review in this case is based on correction of errors of law. Iowa R.App.P. 4.

## I. *Illegality of Contract.*

■ In support of its claim that WDC is trying to enforce an illegal contract, Lankford points to section 320.4 (1991) of our Code. It provides:

The state department of transportation in case of primary roads, and the board of supervisors in case of secondary roads, on written application designating the particular highway and part of the highway, the use of which is desired, may grant permission:

. . . .

4. To lay water mains in, under, or along highways.

Lankford's defense rests on the fact that WDC did not obtain and does not now have written permits from the Iowa Department of Transportation or the Polk County Board of Supervisors for this water main system. In this regard, the record shows that WDC obtained a written permit from IDOT to lay a water main in a 362–foot section of the main supplying Lankford. WDC conceded it did not have written permits covering the rest of the water mains of concern in this case. However, the trial court found that Polk County was aware of WDC's business, and even asked the company to become involved in the Southwest Polk County distribution system by taking over the faltering Bloomfield Water Company. The court also found that the water main along 63rd Street was originally built on private property and that a later highway expansion did not make it illegal. Third, the court found that WDC has all the proper permits and licenses from state authorities to operate a water plant, to withdraw water, and to provide services. Finally, the court found the business of WDC was open and obvious to state and county officials who could have moved to stop any claimed illegal or improper business activity if they had so desired. Our examination of the record supports the court's conclusions.

The president of WDC, Thomas Thorpe, testified that there are several reasons why WDC has not obtained section 320.4 permits for its water mains. In the first place, much of the main was acquired from the Bloomfield Water Company in 1981. Further, he believed that permission was implied by the knowledge and promotion of WDC's business activity by the Polk County Board of Supervisors. In addition, he questioned that any main was in the public right-of-way, and if it was, it was due to a street widening after the main was laid.

We have considered collateral issues to the case at bar in *Water Development Co. v. Board of Water Works*, 488 N.W.2d 158 (Iowa 1992). There, we held that WDC did not suffer an inverse condemnation when Des Moines Water Works built its parallel lines, there was no intentional interference with its contracts, and there was no unfair competition. *Id.* at 161–63. Thus, WDC failed in its attempts at redress from acts by the Des Moines Water Works. We did not, however,

pass on whether WDC needed permits under section 320.4 to pursue its legal remedies.

Lankford's defense that his contract with WDC is void for illegality is basically a public policy argument. Precedent to that consideration, we recognize a presumption that any contractual agreement is binding on the parties. *Commercial Trust & Sav. Bank v. Toy Nat'l Bank*, 373 N.W.2d 521, 524 (Iowa App. 1985). We have also said that "[t]he power to invalidate a contract on public policy grounds is a delicate one, to be exercised solely in cases free from doubt." *Norwest Bank v. Bruett*, 432 N.W.2d 711, 712 (Iowa App.1988) (citing *Walker v. American Family Mut. Ins. Co.*, 340 N.W.2d 599, 601 (Iowa 1983)). We declined to exercise this power where we were unable to find public policy reasons grounded either in statute or case law for doing so. *Id.* at 712–13. When we do invalidate a contract, we nevertheless point out the caution with which this principle is exercised. *See id.* at 712; *Wunschel Law Firm, P.C. v. Clabaugh*, 291 N.W.2d 331, 335, 337 (Iowa 1980). This balance between an illegal factor and a party's rights under contract law was illustrated by our decision in *Beneficial Finance Co. v. Lamos*, 179 N.W.2d 573 (Iowa 1970). There, we sustained the validity of a contract against the attack that it was invalidated by the illegal factor of plaintiff's failure to give defendant receipts as statutorily required. *Id.* at 580.

Section 320.8 declares a simple misdemeanor for failure to obtain a grant of permission if required to lay a water main. Iowa Code § 320.8. In *Lamos*, we approved the general rule on the effect of illegality as follows:

> The fact a statute provides an administrative or criminal penalty for its violation is not the test for determining contractual rights of parties to a transaction involving some form of illegality. The degree of the illegal factor, extent of public harm that may be involved, and moral quality of the conduct of the parties in light of prevailing mores and standards of the community are influential factors in determining whether some judicial remedy will be granted.

*Id.* at 580 (citing 6A Arthur L. Corbin, *Corbin on Contracts* § 1534 (1962)).

We are not convinced from this record that WDC is guilty of any illegality in the operation of its water distribution system to Lankford. The mains preexisted the widening of 63rd Street that eventually reached their location. Moreover, the existence of the mains was clearly known and approved by the Polk County Board of Supervisors. The public has suffered no harm as a result of WDC's business activities in the area. WDC has conducted its business regarding the water mains in a fair and responsible manner. We agree with the court's finding that the contract with Lankford is not void for illegality.

## II. *Frustration of Contract Purpose.*

■ The doctrine of frustration of contract purpose is described as follows:

> Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary.

Restatement (Second) of Contracts § 265 (1981).

We have recognized this legal principle in *McCullough Realty Co. v. Laemmle Film Service*, 181 Iowa 594, 598–600, 165 N.W. 33, 35 (1917). In *Laemmle*, an ordinance enacted subsequent to the execution of a lease made it illegal to use the premises for theatre supply purposes—the principal purpose of the lease. Lankford compares his situation to this case. He claims that the purpose of his signing the water contract with WDC was removed and thereby frustrated when it was no longer the only available supplier because water could then be purchased from the Des Moines Water Works.

Lankford contends he was victimized by circumstances beyond his control. He fought against annexation and did not want to be forced into the city of Des Moines. When annexation occurred and the Des Moines Water Works solicited his business with the

offer of hooking up to the new water main for free, he accepted. He stated that he assumed Des Moines Water Works had worked out everything satisfactorily with WDC. He contacted WDC to cancel his business and WDC picked up its water meter.

Although there is an element of enticement in this history, the attempt to fit into the doctrine of frustration of purpose is warped. The purpose of the contract with WDC was to obtain household water. WDC has always been able and is now ready to serve Lankford and the forty-four other customers lost to Des Moines Water Works. Lankford switched his water supply from WDC to Des Moines Water Works as a matter of choice. There is no frustration of the purpose of the contract with WDC.

The present case is more analogous to *Nora Springs Coop. Co. v. Brandau,* 247 N.W.2d 744, 748 (Iowa 1976). In that case we held that a grain elevator was not justified in refusing delivery of corn because it did not have railroad box cars available to ship it away.

In *Nora Springs,* the existence of an adequate supply of railroad cars was found not to be a basic assumption under which the contract was made. *Id.* at 748. Thus, the court held the shortage of railroad cars did not undermine the purpose of the contract. *Id.* Similarly, in the case at bar, the existence or nonexistence of an alternative water supplier was not a basic contingency upon which the contract between WDC and Lankford hinged. Therefore, as we ruled in *Nora Springs,* the introduction of the alternative water supply by Des Moines Water Works did not frustrate the purpose of the contract between Lankford and WDC.

We find no error of law in the trial court's findings and entry of judgment for plaintiff.

AFFIRMED.