PAUL M. KATCHER, plaintiff, v. MAX R. HEIDENWIRTH, d/b/a Greene Farm and Agricultural Company, appellee, and CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, appellant.

No. 50694.

(Reported in 118 N.W.2d 52)

456

November 13, 1962.

Harvey J. Carter, of Clarksville, and A. B. Howland, B. A. Webster, Jr., and Allen Perrier, all of Des Moines, for appellant.

Westfall, Laird & Burington, of Mason City, and Shepard & Shepard, of Allison, for appellee.

LARSON, J.—On November 9, 1959, Paul M. Katcher, a railroad section laborer, brought an action against the Chicago, Rock Island and Pacific Railroad Company, hereinafter called the company, and Max R. Heidenwirth, doing business as Greene Farm and Agricultural Company, hereinafter referred to as Heidenwirth, for damages of $100,000 for personal injuries sustained on February 11, 1959, when the box of a dump truck operated by Heidenwirth's employee Howard Clapham was lowered upon plaintiff while he was in the act of pounding loose sticking snow from the truck box. The plaintiff alleged that under the Federal Employers' Liability Act the company, as lessee of Heidenwirth's men and equipment, was responsible for the negligence of Clapham, and pleaded common-law negligence against Heidenwirth and Clapham. Katcher demanded a jury trial.

Defendants both answered and filed cross claims against each other, but neither then demanded a jury trial. On November 30, 1960, before trial, the railroad company paid Katcher $10,000 for a full and complete release of all claims and demands against the defendants. Heidenwirth declined to participate in the settlement and, when the company amended its cross-petition on March 6, 1961, setting up the settlement with Katcher and prayed full indemnity from Heidenwirth or, in the alternative, contribution of one half the settlement, the cause was assigned for trial without a jury.

On March 10, 1961, Heidenwirth filed a motion for trial of the remaining issues between defendants before a jury. This motion was resisted by the railroad and, pursuant to a hearing thereon, the court in a written ruling held that, while Heidenwirth was not as a matter of right entitled to a jury trial, under court discretion it was granted.

From the record we learn that at the company's request Heidenwirth rented it a dump truck and an end loader with operators, at a fixed price per hour for each, to perform the work

of removing snow from the station platform and grounds at Greene, Iowa, and that Katcher was injured while overseeing and helping in that operation. When both parties had rested, the company's motion for a directed verdict for full indemnity was overruled, and the court submitted the case to the jury upon four interrogatories. They were, in substance: (1) Did the evidence disclose that Clapham was negligent in lowering the box of the dump truck at that time and place? (2) Was Katcher guilty of contributory negligence? (3) Was Clapham's act the proximate cause of plaintiff's injury? (4) Were Heidenwirth's employees at that time the company's employees? The jury answered that Clapham was Heidenwirth's employee at the time of the injury, was not guilty of negligence which was the proximate cause of Katcher's injury, and that Katcher was guilty of contributory negligence. Judgment was entered on the special findings dismissing the company's cross claim against Heidenwirth, and the railroad company appealed. Appellant states the legal questions presented in this appeal are: (1) Did the evidence disclose that Heidenwirth's employee Clapham was negligent as a matter of law? (2) Was the court justified under the record in granting Heidenwirth a jury trial of the issues? (3) Was the company's pleading in answer to Katcher's petition relating to contributory negligence admissible in this trial of cross claims? (4) Did the court properly instruct the jury in light of the company's requests and objections timely filed? We consider those argued.

Perhaps, due to the different sources of liability applicable to the parties, the settlement by the company alone, and its demand for indemnity or contribution from Heidenwirth, made the case appear somewhat complicated. There is, however, no dispute as to the reasonableness of the company settlement with Katcher, and the company now limits its claim to indemnity only, which somewhat narrows the issues. We think the evidence fully sustains the jury's findings and that the judgment of the trial court was correct.

I. Under the Federal Employers' Liability Act contributory negligence of the injured employee suing the railroad is not a defense, but goes only to mitigation of damages. Federal Employers' Liability Act, section 1, 45 U. S. C. A., section 51.

On the other hand, under state law contributory negligence of the injured party would bar recovery in such a tort action. For exceptions not here involved, see rule 97, Iowa Rules of Civil Procedure; Mast v. Illinois Cent. R. Co., D. C. 1948, 79 F. Supp. 149. Since there was no express agreement as to indemnity between the railroad company and Heidenwirth, a determination that Katcher was contributorily negligent will be a bar to any recovery over by the railroad. Kennedy v. Pennsylvania Railroad Co. (Pa., 1960), 282 F.2d 705, and cases cited therein. In that case a railroad employee, injured in a train derailment which occurred when the train was entering a private crossing of a steel company, recovered from the railroad company under the Federal Employers' Liability Act. The railroad sought contribution or indemnity from the steel company in a third-party action on the theory of negligent crossing maintenance. It was held that recovery depended upon state law regarding the effect of the employee's contributory negligence, and that by pleading and proving same it would bar a recovery over. Substantially, this is the case before us as to the nature of the liability of each party and as to the right of indemnity. Our consideration, then, is as to the liability of Heidenwirth under state law. Of course in this matter the company, standing in the original plaintiff's stead, must assume the burden of establishing liability in Heidenwirth.

II. Cross-defendant Heidenwirth denied any negligence on his part. The company, on the other hand, contends the evidence discloses Clapham, Heidenwirth's employee, was guilty of negligence as a matter of law, and that Katcher was not guilty of contributory negligence. We are inclined to agree with appellee that under the testimony produced, the jury could have found that while the truck was empty at a place some 200 feet from the spot of the accident, Katcher, who was directing the snow removal, mentioned to the driver of the dump truck, Clapham, that he would get a spike maul from the tool shed about two blocks away to knock the snow out of the front end of the dump box when small tools at hand would not do the job, and that about ten minutes later, after Clapham had hauled several loads of snow to the dump spot, Katcher reappeared while Clapham

was dumping a load of snow; that he was then standing four or five feet to the left of the truck and approximately eight feet back, about parallel with the rear wheels; that Clapham observed nothing in his hands and nothing was said between these men at that time, and that Clapham then had the dump box completely elevated. It could have found that the left door of the truck cab was partly open, and that Clapham was watching the snow slide out of the box and attempting to move his truck out of the snow pile by a forward and backward rocking motion; that he thought a movement of Katcher's hand was a signal to move out, and that he then pressed the lever forward to cause the box to return to the normal position; that this movement required only 4 to 5½ seconds, and that Clapham did not know that Katcher was going to get underneath the box of the truck nor that he was going to attempt any act of cleaning out the sticking snow at that time. In substance, both Katcher and Clapham so testified.

It also appeared Katcher was an experienced section hand and as such would be one to appreciate a place of danger. He was acquainted with the mechanism of this truck and box, knew how it worked, and how it was controlled. The box had not been raised at his request, but was being operated in the usual manner. In this operation the dump box is raised to dump the snow and then lowered before returning for another load. Katcher must have been aware that he was entering a place of danger as he bent over the truck frame back of the cab to hit the bottom of the box with the maul. He did not advise Clapham of his purpose, although he must have known that unless Clapham was aware thereof he would in the course of his regular operation lower the box. The reasonableness of his assumption that Clapham saw the maul and knew he was going to use it then was at least a jury question. A jury could well find that an ordinarily prudent person under such circumstances would have asked Clapham to keep the box in an elevated position while he made an attempt to release the sticking snow by pounding on the box from underneath it. The jury could under these conditions find Clapham had no reason to suspect Katcher was going to enter this place of danger, and did not know of it until Katcher called out to "Stop the box"; that in the absence of being advised, he was not

negligent in lowering the box in the ordinary and usual manner, and that Katcher's presence to the left and back of the truck cab indicated no intent on his part to place himself in that perilous position across the truck frame. We conclude the evidence was sufficient to justify the submission of the question of Clapham's negligence, and of Katcher's contributory negligence, to the jury, and that it sustains the jury findings on the interrogatories submitted. Johnston v. Johnson, 225 Iowa 77, 279 N.W. 139, 118 A. L. R. 233; Cable v. Fullerton Lbr. Co., 242 Iowa 1076, 49 N.W.2d 530. Since these were questions upon which reasonable minds might differ, it cannot be said they were established as a matter of law, and the trial court did not err in overruling appellant's motion to direct and for a new trial because the finding was contrary to the weight of the evidence.

III. Appellant assigns as error the granting of a jury trial of the issues between Heidenwirth and the railroad upon Heidenwirth's motion filed March 10, 1961. It contends he had waived that right by failing to promptly demand a jury, and that he was duly advised of the company's proposed settlement with Katcher as early as November 30, 1960.

Appellant maintains that the trial court's discretion to grant a belated motion to submit to a jury issues existing between the original defendants was limited, that Heidenwirth's failure to demand a jury when he answered or within ten days thereafter constituted a waiver, and that thereafter he did not show the "good cause" required by rule 177, R. C. P., which would permit the court to exercise its discretion to grant a jury trial in the matter.

Rule 177, Rules of Civil Procedure, provides in part:

"(a) Jury trial is waived if not demanded according to this rule; but a demand once filed may not be withdrawn without consent of all parties not in default.

"(b) A party desiring jury trial of an issue must make written demand therefor by filing a separate instrument clearly designating such demand not later than ten days after the last pleading directed to that issue. * * *

"(d) Notwithstanding the failure of a party to demand a jury in an action in which such demand might have been made

462

of right, the court, in its discretion on motion and *for good cause shown*, but not ex parte, and upon such terms as the court prescribes, may order a trial by jury of any or all issues." (Emphasis supplied.)

Rule 177 requires a showing of the relevant circumstances which in the sound discretion of the trial court excuse or justify the lateness of the demand, and unless it is made to appear that this discretion was abused, we will not interfere.

The Fifty-first General Assembly amended the rule to allow the trial court the discretion set out in paragraph (d), namely to grant a belated demand for jury trial similar to that found in the federal rule. See author's comment, 2 Iowa Rules of Civil Procedure, Revised Edition, Cook, page 203. However, the addition of the words "for good cause shown" in the Iowa rule has left some doubt as to its meaning. This term in the rule, we think, is flexible and its meaning is not fixed and definite. Each application or motion for trial by jury filed late must be evaluated upon the circumstances appearing, and then determined by the sound discretion of the trial court.

We gave that phrase of the rule some consideration in the case of Schloemer v. Uhlenhopp, 237 Iowa 279, 21 N.W.2d 457, and held therein that counsel's oversight or inadvertence is not good cause which *compels* the granting of a belated demand. That decision left open the question of whether such a showing or excuse would suffice for a court to permit a jury trial on a belated demand. Such a question is not now before us, and we need only to consider the present circumstances shown to the court as an excuse for the late filing. See Schloemer v. Uhlenhopp, supra, at page 285 of 237 Iowa, page 459 of 21 N.W.2d, where we said: "Each case must stand upon its own facts * * *."

This record we think reveals circumstances that justify the late motion. Until the dismissal of Katcher's action the cause stood for a jury trial. A demand for a jury by one party of course inures to the benefit of the other. Nedrow v. Michigan-Wisconsin Pipe Line Co., 246 Iowa 1075, 1077, 70 N.W.2d 843, 844. Therefore, until Katcher's action was dismissed, Heidenwirth was entitled to have all the issues considered by a jury. Although there may be some question as to whether the demand

by Heidenwirth was late under these conditions, the court found appellee was not entitled to a jury trial as a matter of right, and he does not complain of that determination. It is true, appellee did not make his demand within ten days after the issues between these parties were determined, but the fact that he asked for it within four days after being officially notified of the settlement with Katcher entitled him to consideration in determining the validity of his excuse. It is not disputed that the first actual or official notice to Heidenwirth that Katcher's action was dismissed, was when appellant filed its amendment March 6, 1961, setting forth therein the consummation of the settlement. Four days thereafter on March 10 appellee moved for a jury trial. These facts indicate that Heidenwirth did not waive nor intend to waive his right to a jury trial. We think it was a showing of sufficient circumstance surrounding the belated demand to justify the court's ruling, and we are satisfied the trial court did not abuse its discretion in granting the motion.

█ There was no delay caused by permitting the jury trial, for it commenced on March 20, 1961. The right to a jury trial is substantial, and considerable trial court discretion in granting it is desirable and proper. If no showing at all is made, the trial court would probably abuse its discretion in granting such a motion. We so indicated in Rubin Brothers Butter & Egg Co. v. Larson, 245 Iowa 741, 743, 63 N.W.2d 908, 909, where we said: "Defendant made no attempt to allege or show 'good cause' as contemplated by rule 177 (d)", and, since no excuse was given for the long delay in filing the demand, it was not in error in refusing it. Also see Hampton v. Burrell, 236 Iowa 79, 86, 17 N.W.2d 110, 114, and Schloemer v. Uhlenhopp, supra; 50 C. J. S., Juries, section 99, page 803, and section 111, page 822; 31 Am. Jur., Jury, section 40; Annotation, 106 A. L. R. 203.

█ Authorities from other jurisdictions under different procedural rules and with other factual situations are not too helpful except that they seem to support the rule that when the matter is in doubt it should be resolved in favor of granting the trial by jury. 64 A. L. R.2d 519. In Kass v. Baskin, 164 F.2d 513, 517, the court said: "We hold that when a party has failed to comply with the requirements of the Rule in respect to demands for jury

trial, and thereafter appeals to the court to grant such trial, the matter lies within the sound discretion of the court. In exercising that discretion, the court may consider all elements pertinent to the interests of both parties and also to the general conduct of the business of the court." Also see Brandt v. Olson, 190 F. Supp. 683, for a good discussion of the problem.

IV. In its next assignment appellant contends the trial court committed reversible error in receiving in evidence over its objections a withdrawn paragraph of appellant's answer to the original petition of Katcher wherein the company, as a defendant, pleaded Katcher was guilty of contributory negligence. In the original pleadings the answer of the company stated it "denies that the plaintiff was not guilty of any negligence which contributed to said occurrence, but states and shows the court that the plaintiff [Katcher] was guilty of contributory negligence which caused and contributed to his injuries." After the company settlement this portion of the answer was by leave of court withdrawn.

Just before Heidenwirth rested his case and in the absence of the jury, counsel proposed to offer the withdrawn portion of the company's original answer. The railroad company objected, contending it had been withdrawn and that it was immaterial and irrelevant to the issues now involved in the case. The offer was made and the appellant's objection was overruled by the court. It was then read to the jury. After recess appellant's counsel asked leave of court to add to his objections that it did "not constitute an admission of fact, but is purely a conclusion of law and therefore is not admissible as an admission against interest * * *." The court overruled the motion to reconsider. We shall consider these objections separately.

Appellant admits that generally pleadings are admissible in evidence in the same case between the same parties, but contends the rule does not authorize the use of pleadings as admissions against interest in separate actions with wholly separate issues between different parties. It cites Workshop Outlines, 86th Annual Meeting of the Iowa State Bar Association, page 23; 31 C. J. S., Evidence, sections 301 and 302; IV Wigmore on Evidence, Third Edition, section 1064 (2), page 48; and several cases

outside this jurisdiction. We do not agree with such a broad contention, nor do we find the authorities support it.

In 31 C. J. S., Evidence, section 304, pages 1079 to 1082, it is stated: "Although a pleading which has been withdrawn or stricken out or superseded by amendment is out of the case in its capacity as a pleading, so that the pleader is no longer concluded by it, and statements therein cease to be judicial admissions, they still remain as statements seriously made and are admissible in evidence, on behalf of the opposite party, as admissions of the pleader, where he is a party to the subsequent litigation, where the statements are material and relevant to the issues in connection with which they are sought to be introduced, and where, in case of a pleading withdrawn by leave of court, no order is made relieving the pleader from the admissions made; and the probative force of such statements has even been given a prima facie value. * * *

"To be so used as evidence by the adverse party, the statement or admission must be contrary to a contention made by the pleader in the case on trial, and the superseded pleading must be introduced in evidence, except where the pleading is superseded or amended after the evidence is closed. * * *

"Abandoned or superseded pleadings may be independently relevant, if they are inconsistent with the subsequent pleadings, and where they possess the characteristic of independent relevancy they may be received to prove some independent fact connected with the case, to show that the pleader made a different claim or defense at another time, to raise unfavorable inferences as to good faith in a belated claim or defense, * * *."

Appellee offered the withdrawn pleading to show a change of company position on the vital question of the contributory negligence. It was relevant and material. As a defendant in the original action, the company could mitigate its damages to Katcher under the Federal Employers' Liability Act by alleging and proving him guilty of contributory negligence. As plaintiff in the cross claim against appellee, it could not establish liability in appellee if Katcher was guilty of contributory negligence. Thus in the indemnity feature of this case actual contributory negligence of Katcher shown or admitted would bar recovery

from appellee under Iowa law. After Katcher's action was dismissed, the vital issue as to his contributory negligence remained. In order to avoid a judicial admission, appellant amended his answer and now maintains Katcher was not as a matter of fact guilty of contributory negligence.

The weight to be given the admission found in its prior pleading in connection with its explanation was a question for the jury. Larson v. Stanton State Bank, 202 Iowa 333, 338, 208 N.W. 726. Also bearing on the admissibility of this withdrawn pleading as evidence of an admission, see Lawrence v. Tschirgi, 244 Iowa 386, 57 N.W.2d 46, and citations; Beery v. Glynn, 214 Iowa 635, 243 N.W. 365, and citations; Sievertsen v. Paxton-Eckman Chemical Co., 160 Iowa 662, 133 N.W. 744, 142 N.W. 424; Arnd v. Aylesworth, 145 Iowa 185, 123 N.W. 1000, 29 L. R. A., N. S., 638; and the leading case of Krajewski v. Western & Southern Life Ins. Co., 241 Mich. 396, 217 N.W. 62.

We have never changed our position that the opposite party was entitled to introduce inconsistent pleadings relating to the same issue into evidence for whatever the jury might find it worth in arriving at the truth of the controversy. Although not conclusive and open to explanation, we note the change of appellant's position on such a vital issue as we have here might easily be given such weight in the mind of the factfinder that its exclusion would amount to prejudicial error.

Regardless of its materiality or relevancy, appellant contends the deleted pleading in its answer was a pure conclusion of law and therefore not admissible against interest. It is true the admission involved is not one of evidentiary fact, but is perhaps one of ultimate fact. It is an admission in the form of a conclusion drawn from facts of which it is presumed to have knowledge, and from which it has adequately informed itself. As such it was admissible.

The general rule concerning admissions is that they are competent when they constitute admissions of the existence of relevant matters. We so held in the case of Eggermont v. Central Surety and Insurance Corp., 238 Iowa 28, 32, 24 N.W.2d 809. There it was held a deposition of a bus driver that an involved truck driver " 'told me that it was absolutely his fault in all

ways' " was properly admitted over plaintiff's objection and motion that it be excluded on the ground that the statement was a conclusion.

The rationale of this seeming majority rule appears to be that when a man speaks against his own interest it is to be supposed that he has made an adequate investigation. It would seem even more so in a pleading filed in a legal action. McCormick on Evidence, Hornbook Series, pages 506, 507.

We must, therefore, conclude no error occurred in admitting, for what it was worth to the jury, the withdrawn pleading as an admission against the interest of the pleader.

V. Appellant's final assignment of error argued is that the court erred by giving Instruction No. 7 as to "sudden emergency" because "there was no evidence before the jury that either Clapham or Katcher acted under any sudden emergency" and that the instruction was therefore prejudicial.

The trial court in Instruction No. 7 told the jury: "When one is confronted with a sudden emergency, not brought about by his own fault, and because thereof is required to act upon the impulse of the moment without sufficient time to determine with certainty the best course to pursue, he is not held to the same accuracy of judgment as would be required of him if he had time for deliberation. Under such circumstances he is required to act only as an ordinary, careful and prudent person would act when suddenly placed in a similar position, and if he so acts he would not be negligent." Timely exception to the instruction was made, which in substance urged that the facts did not justify such an instruction, that the fault or negligence of Clapham in failing to maintain a proper lookout and to exercise ordinary care brought about the situation which created the alleged emergency, and that the giving of the instruction could have misled the jury.

It is true the necessity for quick action does not constitute an emergency within the rule where the situation or danger calling for such action should have been reasonably anticipated and should have been met with preparation. 65 C. J. S., Negligence, section 17, page 411. However, the testimony here was that until Clapham heard Katcher call out "Stop the box", Clapham was not aware that Katcher was in the position where he would be

caught by the descending dump box, that when he heard the cry he discovered for the first time Katcher's peril, grabbed the lever in his cab and pulled it back in an effort to stop the descent, but in doing so pulled it too far causing too great a load upon the motor, killing it. When raising the box, it appears the motor should be accelerated to provide the power to operate the hydraulic lift, but in the excitement Clapham's movements, first in failing to stop the control lever at center, and then in failing to accelerate the engine, allowed the box to descend and pin Katcher to the truck frame.

Under such circumstances the instruction was proper. We think it became a jury question as to whether Clapham was negligent in his effort to stop the box after he became aware of Katcher's plight. The time for action was short, 4 to 5½ seconds after the box had started down. Under like circumstances in a long line of cases we have held an emergency instruction was proper and required. Murray v. Lang, 252 Iowa 260, 106 N.W.2d 643; Harris v. Clark, 251 Iowa 807, 103 N.W.2d 215; Menke v. Peterschmidt, 246 Iowa 722, 69 N.W.2d 65; Koob v. Schmolt, 241 Iowa 1294, 45 N.W.2d 216.

A good statement of the rule is found in the Harris case where we said at page 810 of 251 Iowa, page 217 of 103 N.W.2d: "The general rule is stated in 65 C. J. S., Negligence, section 252, page 1134, as follows: 'Emergency. The questions, whether an emergency existed, and whether a person who was confronted with a sudden emergency exercised such care as an ordinarily prudent man would have exercised, when confronted with a like emergency, ordinarily are questions of fact for the jury. The question whether one was without fault in bringing about an emergency generally is for the jury.' That is the rule in this jurisdiction [citations]."

We think such was the situation before the court here, and find no error in submitting the question of fault and negligence to the jury under the instruction given.

VI. While this action may have been somewhat difficult for an average juror to fully understand, nevertheless there was nothing complicated about the interrogatories submitted. The jury found Clapham was the employee of Heidenwirth and the

evidence fully supports that finding. It found Clapham was not negligent in failing to discover Katcher in his place of danger before lowering the truck box and was not negligent in his efforts to avoid crushing Katcher when he became aware of his position, and there is substantial evidence to sustain those findings. It found Katcher was guilty of contributory negligence and the record supports such a finding of fact. As pointed out heretofore, in order for appellant to successfully maintain its action for indemnity, it must carry the burden of the original plaintiff, Katcher, and show that Clapham, the employee of Heidenwirth, was negligent, that such negligence was the proximate cause of Katcher's injury and that Katcher was free from any negligence contributing to his own injury. It was not sufficient that appellant show its liability under the Federal Employers' Liability Act, for there was no evidence that by contract Heidenwirth agreed to hold the railroad company harmless for any acts of his employees. Kennedy v. Pennsylvania Railroad Co., supra, 282 F.2d 705. In other words, liability, if any, arose due to tort, not contract, and since no tort was committed by Heidenwirth, indemnity was properly denied. While it may seem the company unnecessarily paid Katcher $10,000 as damages, that is not the case, for had the original action been tried, it is quite clear that any contributory negligence on the part of Katcher would have barred his claim against Heidenwirth, but as to the railroad it would only have mitigated the damages.

Having found no reversible error, the judgment of the trial court must be affirmed.—Affirmed.

All JUSTICES concur except STUART, J., who takes no part.