Jay L. POYZER, Appellee,

v.

Dorothy McGRAW, Dale McGraw, and
Verle McGraw, Appellants.

No. 83–1353.

Supreme Court of Iowa.

Jan. 16, 1985.

Rehearing Denied Feb. 18, 1985.

Thomas D. Hanson and Barry A. Russell of Hanson, Bjork & Russell, Des Moines, for appellants.

Francis Fitzgibbons, Joseph L. Fitzgibbons and Harold W. White of Fitzgibbons Bros., Estherville, for appellee.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, SCHULTZ, and WOLLE, JJ.

HARRIS, Justice.

This was a personal injury suit by an employee of a farm partnership. The worker was seriously injured by a gas explosion and fire in a house furnished to him as a part of his employment. The partners defended in part on the ground that plaintiff's exclusive remedy was workers' compensation. *See* Iowa Code section 85.20 (1983). The case was however submitted on the theory that the employing partnership was a separate entity and that the individual partners could be sued as third parties. After the jury allowed a substantial recovery, we filed our opinion in *Carlson v. Carlson*, 346 N.W.2d 525 (Iowa 1984). In *Carlson*, we adopted the view expounded by defendant:

> ... Iowa Code section 85.20 precludes an injured employee ... from suing a partner in an independent tort action for his injuries received during the course of his employment for the partnership.

*Id.* at 527.

In view of our holding in *Carlson* the question becomes whether the special verdicts reached by the jury were sufficient to

preserve an award against a non-partner. For reasons we shall explain our answer is no. We reverse the judgment of the trial court and remand in part for a new trial.

Defendants Dale and Dorothy McGraw are husband and wife. Defendant Verle McGraw is their son. Dale and Verle are partners in a hog raising and farming operation. Dorothy is not a partner but does own a farm which was rented by the partnership and on which the partnership operation was in part conducted. A tenant house was situated on Dorothy's farm and was made available as a dwelling for partnership employees. It was highly disputed at trial whether or not Dorothy retained or exercised any dominion over the house.

After plaintiff was hired as a partnership employee he was assigned the house owned by Dorothy as a dwelling for him and his family. It had been vacated about a month before by a previous employee. On the evening of November 24, 1979, plaintiff moved into the home. Because heat was needed for the home, plaintiff went across the road to the house of Verle for assistance in lighting the furnace. Verle accompanied plaintiff to the house, turned on the propane gas source at the adjacent tank and succeeded in lighting the furnace. It did not occur to Verle to check the kitchen where a gas outlet from the same propane tank was provided for a cook stove.

It happened that the prior employee-tenant, after shutting off the propane tank, had removed his kitchen stove without capping the propane line at the kitchen outlet. When the tank was again turned on to provide heat for the furnace, gas leaked directly into the kitchen. As a result of the leaking gas there was an explosion and fire during the early hours of the next day. Plaintiff's injuries resulted.

Although a purist might challenge the characterization the case was at least in part submitted to the jury by special verdicts under Iowa rule of civil procedure 205. This rule is our counterpart to federal rule 49(a). There was a deviation from the usual special verdict procedure in that there were also special interrogatories under Iowa rule of civil procedure 206 and, unnecessarily, a recapitulation by the jury of its findings by general verdict forms.

The jury found liability on the part of each defendant. It apportioned responsibility thirty percent to Dorothy, thirty percent to Dale, and forty percent to Verle. By way of special interrogatories the jury found both Dale and Verle were agents of Dorothy in the operation and maintenance of the residence. The jury also found plaintiff should recover on the theory of breach of implied warranty of habitability and separately found that he should recover on the theory of violation of a landlord's duty. Finally, the jury specified that none of the recoveries against Dale or against Verle were based on either's role as partner.

■ I. Because of our holding in *Carlson*, the judgments against Dale and Verle must be set aside. Plaintiff argues the judgment should nevertheless stand against Dorothy. If true, this would take on considerably more significance than if other defendants shared in payment of the judgment. Under our holding in *Rozevink v. Faris*, 342 N.W.2d 845 (Iowa 1983) Dorothy would become liable for all plaintiff's injuries:

> Were we to eliminate joint and several liability as the defendant advocates, the burden of the insolvent or immune defendant would fall on the plaintiff; in that circumstance, plaintiff's damages would be reduced beyond the percentage of fault *attributable to him*. We do not believe the doctrine of comparative negligence requires this further reduction. Nor do we believe this burden is the price plaintiffs must pay for being relieved of the contributory negligence as bar. The *quid pro quo* is the reduction of plaintiff's damages.

342 N.W.2d at 850 (quoting *Coney v. J.L.G. Industries, Inc.*, 97 Ill.2d 104, 123, 73 Ill. Dec. 337, 454 N.E.2d 197, 205 (1983)) (emphasis in original).

Plaintiff strenuously argues that the special findings of the jury are ample for

application of *Rozevink,* resulting in a judgment against Dorothy for the full $770,000 awarded by the jury. Dorothy points to her assignments of error in support of her assertion that no judgment can stand against her.

II. One of plaintiff's theories of Dorothy's liability was grounded on Iowa's landlord tenant act. Iowa Code Ch. 562A (1983). We know from a special finding that the jury based its assessment against Dorothy in part on this theory.

Dorothy challenges this submission on two bases. First, she thinks the situation falls under either or both of two statutory exclusions. *See* § 562A.5(5) (occupancy by an employee of a landlord whose right to occupancy is conditional upon employment in and about the premises) and § 562A.5(7) (occupancy under rental agreement covering premises used by occupant primarily for agricultural purposes). Dorothy's alternative challenge to the chapter's appropriateness rests on the statutory definitions. She points out that, in order to qualify as a "tenant" under section 562A.6(13), plaintiff's occupancy had to be under a "rental agreement." "Rental agreement" is defined in sections 562A.6(9). It can be either oral or written, and must embody "the terms and conditions concerning the use and occupancy of [the] dwelling ... and premises."

■ We pass Dorothy's first challenge to submission of the chapter 562A theory and accept her second one. Plaintiff had no agreement with Dorothy; his agreement was with the partnership. We cannot stretch the facts to find plaintiff had a second, separate "rental agreement" with Dorothy. Recovery cannot be allowed against Dorothy under chapter 562A.

III. Over Dorothy's objection, the trial court also submitted a theory of implied warranty of habitability. This theory was based on our holding in *Mease v. Fox,* 200 N.W.2d 791, 796 (Iowa 1972) ("... the landlord impliedly warrants at the outset of the lease that there are no latent defects in facilities and utilities vital to the use of the premises for residential purposes [and war-

rants to] maintain habitability of the dwelling.")

■ This theory was also inappropriate. The *Mease* theory, which has since been complemented by chapter 562A, presupposes a leasehold and a landlord-tenant relationship. As explained, plaintiff was the tenant of the partnership and not Dorothy.

■ It was error to submit the *Mease* implied warranty theory. Our determination makes it unnecessary for us to consider Dorothy's claim that breach of the implied warranty under *Mease* will not support a damage award for personal injuries.

■ IV. We also agree with Dorothy's contention that there was no substantial evidence of an agency relationship between her and the partnership. *See Brown v. Schmitz,* 237 Iowa 418, 424, 22 N.W.2d 340, 343 (1946). (Agency results from manifestation of consent by one person that another shall act for and be subject to the control of the former.) We find no evidence, either direct or circumstantial, of an understanding that the partners would be subject to Dorothy's control.

■ The only theory for which we can find a basis for Dorothy's liability was on plaintiff's claim that she was negligent. There was ample evidence that the explosion resulted from the negligence of whoever controlled the premises. An owner of real estate who retains control of the premises owes the duty of due care to an invitee. *Coleman v. Hall,* 161 N.W.2d 329, 333 (Iowa 1968) Control is a necessary condition for any liability for breach of this duty. *Shill v. Careage Corp.,* 353 N.W.2d 416, 420 (Iowa 1984).

Dorothy and both partners deny she retained any control over the dwelling and the jury might well have agreed with the denial. Plaintiff's evidence to the contrary consisted of only three things.

Plaintiff's mother testified that, on the morning following the explosion, Dorothy said she had been measuring and preparing curtains for the dwelling. Another witness testified Dorothy told him she had been in

the house the previous week for the same purpose. Dorothy herself testified without denying her work on the curtains and drapes.

Significantly, Dorothy testified that the prior tenants were people she assumed would clean the house properly. She did so to explain why she didn't inspect the property before plaintiff moved in. The jury could deduce from her testimony that it was only because of her respect for the prior tenants that she did not inspect the property.

 There was more. Dorothy filed and later withdrew a pleading admitting plaintiff's allegation that she owned, operated, and maintained the property in question. Although Dorothy would have it otherwise, her withdrawal of the admission did not erase it. It remained for Dorothy to explain it after the admission was offered. And it was for the jury to sort through the admission, its withdrawal, and Dorothy's explanation and determine the weight to give to it. *Katcher v. Heidenwirth,* 254 Iowa 454, 466–67, 118 N.W.2d 52, 59 (1962). A jury question was generated on whether Dorothy operated the tenant house. *See Clubb v. Osborn,* 260 Iowa 223, 227, 149 N.W.2d 318, 320 (1967).

V. The defendants claim the trial court abused its discretion in an evidentiary ruling which received the testimony of an expert witness. The witness was qualified as an economist. He was a professor at a university where he was a department head. He testified concerning plaintiff's loss of earning capacity. The witnesses' testimony and trial exhibits projecting future income were similar to what we approved in *Schmitt v. Jenkins Truck Lines, Inc.,* 170 N.W.2d 632, 657–58 (Iowa 1969) and *Schnebly v. Baker,* 217 N.W.2d 708, 727–28 (Iowa 1974).

According to his testimony the expert used two approaches in reaching his opinion. By the first, the farm worker approach, he estimated plaintiff's income for the period of his life expectancy. After making certain adjustments, the witness discounted the total to arrive at a present value. He also used a second method which he called the modified child approach. The second approach, which served as a check on the first, simply computed the lifetime income of the average person in Iowa with a high school education.

Defendants vigorously objected to the testimony on the ground that there were fundamental flaws in the factual assumptions under either approach. Under the first approach the witness assumed a weekly wage of $190 which was not plaintiff's wage, said to be $150. While testifying, the witness made a second projection, assuming a $130 weekly wage. This was not accurate either. The flaw in the second approach, according to defendants, is the assumption that plaintiff was an ordinary high school graduate. He is in fact a special education graduate.

 Admissibility of expert testimony is discretionary. *State ex rel. Leas In Interest of O'Neal,* 303 N.W.2d 414, 420 (Iowa 1981). To support the ruling plaintiff argues that his actual earnings were within the parameters of the witness' two projections. He argues that the jury could make its own determination on plaintiff's actual earnings and could apply the expert testimony accordingly. He also argues that the jury could do the same with plaintiff's educational background.

Because we must remand the case for a new trial on other grounds, it is not necessary for us to decide if the ruling was an abuse of discretion. The question is not apt to recur in the new trial.

VI. As a separate and independent element of damages, the trial court submitted plaintiff's claim of a diminished capacity for enjoying life. We seem never to have considered such a submission. Plaintiff cites *Swiler v. Baker's Super Market, Inc.,* 203 Neb. 183, 277 N.W.2d 697, 700 (1979) in support of the instruction. In that case, the Nebraska court found no error but, recognizing the instruction might be redundant, stated it did not recommend the practice.

 Our own opinions have assiduously guarded against duplicate damage awards. *Team Central, Inc. v. Teamco, Inc.,* 271 N.W.2d 914, 925 (Iowa 1979) ("Duplicate or overlapping damages are to be avoided"). We recognize loss of enjoyment of life as a factor to be considered as a part of future pain and suffering. *Mabrier v. A.M. Servicing Corp. of Raytown,* 161 N.W.2d 180, 183 (Iowa 1968); *Holmquist v. Volkswagon of America, Inc.,* 261 N.W.2d 516, 526 (Iowa Ct.App.1977). To whatever extent recovery for such a loss should be allowed it is already recognized, under *Mabrier,* as a factor in other elements of damages. It would be plainly duplicative to allow a separate award for loss of enjoyment of life. Although we recognize there is a contrary view, we join the states which refuse to allow the submission of loss of enjoyment of life as a separate element of damages. *See* Annot. 34 A.L.R.4th 293, 300–04 (1984).

 VII. In final argument to the jury plaintiff's counsel detailed how various findings on the special verdicts would impact on plaintiff's right of recovery. Ordinarily, rulings on objections to arguments of counsel are discretionary. *Rasmussen v. Thilges,* 174 N.W.2d 384, 391 (1970). It is significant on such a question whether the case was submitted by way of a general verdict or by way of special verdicts under rule 205. Counsel has a clear right to make such an argument when arguing a general verdict submission. *Powell v. Chittick,* 89 Iowa 513, 519, 56 N.W. 652, 654 (1893). A different rule prevails in special verdict cases.

 A special verdict submission, not to be confused with a general verdict submission with special interrogatories under rule 206, can serve two unique purposes. Special verdicts allow greatly simplified submission of the cases involving complicated legal principles because the jury need be instructed only insofar as necessary in order for it to make the required factual findings. Thereafter the trial court can enter the general verdict by applying the applicable law to the jury's factual determinations.

 A second function of special verdicts is to compel a jury to more accurately focus on what it properly should. Factual determinations tend to be evidence based, not result oriented. *See* 76 Am.Jur.2d Trial § 1175 (1975); 89 C.J.S. Trial § 529(a)(2) (1955). In a special verdict submission it is wholly unnecessary and is generally improper for the jury to be concerned with the effect of its special findings.

For this reason it is commonly thought to be inappropriate in a special verdicts submission for counsel to direct the jury's attention to the impact of any specific findings. *ERB v. Mutual Service Casualty Co.,* 20 Wis.2d 530, 533–36, 123 N.W.2d 493, 495–96 (1963); *Pecor v. Home Indemnity Co.,* 234 Wis. 407, 318–20, 291 N.W. 313, 318–19 (1940); 88 C.J.S. Trial § 174 (1955).[1]

Under the circumstances here it does not seem appropriate to consider whether the trial court's ruling, rejecting the challenge to the argument, was an abuse of discretion. Although there were special verdicts, there was also a general verdict. Because the submission was a combination of special verdicts and a general verdict we decline to review the assignment.

The judgments of the trial court entered against Dale McGraw and Verle McGraw are reversed. The judgment of the trial court against Dorothy McGraw is reversed and the case remanded for a new trial on the plaintiff's negligence claim against her.

**REVERSED AND REMANDED.**

---

1. We need not, and do not, decide the effect, if any, of Iowa Code section 668.3 recently enacted by the 70th G.A. *See* H.F. 2487, 1984 Iowa Legis.Serv. No. 7, p. 8–9. The new provision does not apply in this case.