# IN THE COURT OF APPEALS OF IOWA

No. 18-0834
Filed July 24, 2019

**HEARTLAND CO-OP,**
        Plaintiff-Appellee,

**vs.**

**RONALD NELSON,**
        Defendant-Appellant,
_____

        Appeal from the Iowa District Court for Crawford County, Tod Deck,

Judge.


        The defendant appeals from judgment entered following a jury verdict

determining he has successor liability for a judgment previously entered against

his farming corporation.  **AFFIRMED.**


        Peter C. Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellant.

        Benjamin P. Roach and Thomas C. Goodhue of Nyemaster Goode, P.C.,

Des Moines, for appellee.


        Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**POTTERFIELD, Presiding Judge.**

Ronald Nelson appeals from the judgment entered against him following a jury trial, where the jury determined he was the successor-in-interest and mere continuation of Broken Wing Farms, Inc., against which Heartland Co-op had obtained a judgment in 2014 for $810,021.95 with 3.25% interest.

On appeal, Nelson[1] argues he was wrongly prevented from challenging Broken Wing's debt to Heartland and the district court erred by allowing the arbitration award against Broken Wing to have preclusive effect on the successor-liability claim against him personally. He also disputes the district court's rulings on two jury instructions and maintains the court should have granted his motion for directed verdict because there was insufficient evidence to submit the question of his successor liability to the jury.

**I. Background Facts and Procedure.**

Heartland is a farmer-owned Iowa cooperative, which entered into twenty contracts[2] with Broken Wing, a now defunct corporation that was owned solely by Ronald Nelson. The contracts required Broken Wing to deliver 650,000 bushels of grain to Heartland. Broken Wing failed to deliver the required amount of grain—delivering only 45,000 of 50,000 bushels required by one of the twenty contracts—and then sent Heartland a letter indicating it was cancelling the twenty contracts. Pursuant to the contracts, Heartland submitted an arbitration demand to the National Grain and Feed Association. The tribunal found Broken Wing in

---

[1] Any reference to "Nelson" is a reference to Ronald Nelson. We refer to his son, Aaron Nelson, and his wife, Karen Nelson, by their first names.
[2] The parties entered into more than the twenty contracts at issue here, but we do not discuss or otherwise consider them.

breach of contract and awarded Heartland damages in the amount $810,021.95 with interest of 3.25% from the date of the decision, August 15, 2013, until satisfaction of the award.

Heartland filed an application to confirm the arbitration award in the district court, which Broken Wing resisted. The district court noted that each of the twenty contracts included a provision, stating:

> The parties agree that the sole remedy for resolution of all disputes arising under this contract will be through arbitration proceedings before the National Grain and Feed Association (NGFA) under the NGFA arbitration rules. The decision and award determination through this arbitration will be final and binding on both parties and may be enforced by any court having jurisdiction.

The court concluded that each of the contracts were signed and valid and that the dispute was "one that is arbitrable under the contract and that it is within the scope of the arbiter's authority to determine the dispute between the parties." In March 2014, the district court confirmed the arbitration award and entered judgment against Broken Wing accordingly.

By this point, Broken Wing was defunct, and the judgment went unsatisfied.

In 2016, Heartland filed a lawsuit, suing Ronald Nelson; his wife, Karen; his son, Aaron; the Nelsons' new partnership, 3N Partnership; and the alleged unnamed partnership that included Broken Wing, Karen, and Aaron. Heartland argued the various named parties were liable for Broken Wing's debt under two theories: partner liability and successor-in-interest liability. Regarding partner liability, Heartland alleged Broken Wing acted as the agent of the alleged unnamed partnership, which resulted in Aaron and Karen having partner liability

for Broken Wing's breach of the contracts with Heartland. As for successor liability, Heartland alleged 3N Partnership was a successor or mere continuation of Broken Wing and that Ronald, Karen, and Aaron, as the three partners of 3N Partnership, were jointly and severally liable for the judgment entered against Broken Wing.

The defendants filed a motion for partial summary judgment, asking the court to determine as a matter of law that the confirmed arbitration award and judgment against Broken Wing was not binding on them. They also asked the court to find the confirmed arbitration award was not admissible to prove any indebtedness of Broken Wing to Heartland or as a basis for establishing liability of the defendants for Heartland's indebtedness. Heartland resisted.

Following a hearing, the court originally ruled that the prior arbitration award was not admissible for any purpose at the jury trial.

The court reconsidered the motion during the pre-trial hearing, again ruling evidence of the arbitration award was inadmissible. The court concluded the award did not have any preclusive effect as it related to Heartland's claim for partner liability. In other words, Heartland had to establish breach of contract and damages—on top of the existence of the partnership—in order to succeed on its partnership liability claim. However, the court concluded it "c[ould] and w[ould] find as a matter of law that any party that the jury finds is successor in interest [to Broken Wing] under the law of the state of Iowa as it relates to the liability for the predecessor's debts is liable for that debt." The court reiterated that the arbitration award did not need to be discussed in front of the jury for the court to draw the legal conclusion later if warranted.

The jury trial took place over three days in late February and early March 2018. Heartland called as a witness Kent Jessen, its director of grain merchandising, who is in charge of buying grain from famers and then overseeing the risk management, sale, and logistics of the purchased grain. Jessen testified the twenty contracts at issue between Heartland and Broken Wing required Broken Wing to deliver 650,000 bushels of grain to Heartland at various times. On January 30, 2012, Broken Wing delivered 45,000 bushels for a contract that required the delivery of 50,000 bushels. Ronald Nelson called Heartland on February 14, indicating Broken Wing was done delivering and wanted what it was owed for the partial delivery. Heartland cut the check on February 16 but did not send it; instead, Jessen called Nelson a few times, asking if they could meet in order for him to give Nelson the check and also to work out a plan regarding Broken Wing's fulfillment of the rest of its contracts. Nelson did not respond, and the two did not meet. On March 4, Broken Wing sent a letter to Heartland, stating it was concerned about Heartland's payment policy on partial deliveries as it had not yet received payment for the January delivery and declaring it would not deliver any more grain until it received the payment. Heartland did not respond in writing to the letter, but Jessen continued trying to reach Nelson by way of phone call. Then, Broken Wing sent Heartland a letter on April 11 stating it was "canceling our contractual relationships." Nelson spoke with Jessen on the phone on April 12 and reiterated that he, as president of Broken Wing, was cancelling all twenty of the contracts. Because Heartland had already contracted to sell the 605,000 bushels of grain it expected to receive from Broken Wing, it had to buy back those sales as part of the

cancellation. The price of grain had increased since the parties contracted; the difference in the prices plus the interest incurred in hedging totaled $810,021.95, which Heartland asked for in damages.

Ronald Nelson testified he was the sole owner of the stock for the Broken Wing corporation. Broken Wing grew crops in 2012 but not 2013. In early 2013, Nelson formed Nelron, LLC. Nelron, an LLC owned by Aaron, and an LLC owned by Karen made up 3N Partnership[3]—each with one-third interest. Beginning in 2013, 3N began growing crops. According to Nelson's testimony, 3N farmed "basically all the same farmland" Broken Wing, Aaron, and Karen had farmed in 2012. 3N bought inputs, chemicals, and supplies from the same suppliers Broken Wing purchased supplies, simply taking over Broken Wing's accounts in some instances. 3N also, as Broken Wing had, leased grain bins and equipment from Nelson. Once Nelron was formed, it took over Broken Wing's bank account and Broken Wing's loan obligations to the local bank. Additionally, Nelson deposited checks written to Broken Wing in the account Nelron took over. According to Nelson, the family formed 3N in order to remain eligible for Farm Service Agency (FSA) loans and subsidies because Karen, who worked a full-time job outside of farming, was not providing enough hours of labor to otherwise be eligible.

According to the Certified Public Accountant (CPA) who helped prepare the taxes and provide bookkeeping services for the individual members of the Nelson family and their various companies, some dividends issues to Broken

---

[3] By the time of the 2018 trial, Nelron was defunct. Karen, Aaron, and Ronald Nelson continued to operate together as 3N Partnership, but they did so in their individual capacities rather than through their three separate LLCs.

Wing in 2013 were ultimately claimed on the taxes of 3N. Additionally, the CPA testified that grain owned by Broken Wing was contributed to 3N at its formation; Broken Wing was never paid for the grain.

By way of a special verdict, the jury found Broken Wing breached its contracts with Heartland and Heartland suffered $810,021.95 as a result. However, the jury found Broken Wing was not a partner in a farming business with Aaron or Karen Nelson and that 3N Partnership was not a successor or mere continuation of Broken Wing. As a result, the district court dismissed all claims against defendants Aaron Nelson; Karen Nelson; 3N Partnership; and the alleged unnamed partnership of Broken Wing, Aaron, and Karen. The jury concluded Ronald Nelson was a successor and mere continuation of Broken Wing. The court determined that as the successor in interest to Broken Wing, Nelson was, as a matter of law, liable for the 2014 judgment entered against Broken Wing.

Ronald Nelson, the only remaining defendant, appeals.

## II. Discussion.

### A. Disputing Broken Wing's Debt.

Nelson maintains he was wrongly prevented from disputing the debt Heartland claimed it was owed by Broken Wing.

Before trial, it was Nelson who asked the court to rule that the evidence of the arbitration award was not admissible. The court agreed, ruling the evidence would not be admitted or discussed in front of the jury. Then, outside the presence of the jury during trial, Heartland asked the court to reconsider its previous ruling, arguing Nelson

opened the door to that based on the testimony of Ronald Nelson and the argument and clear inference that they believe certain things have or haven't happened because they continue to receive these monthly grain statements, despite the fact that they know there's already been an arbitration award that's been confirmed against them. It's misleading to the jury.

Nelson resisted. The court ruled:

I think that the defense is treading pretty close to the line. There's been two questions where the defendants have referred to the arbitration award—or excuse me, the arbitration process as part of the rules within the question to two different witnesses. I think that that begins to create an appearance that Heartland perhaps didn't take some action towards arbitration that they should have.

I also think that the line of questioning we've just concluded with Mr. Nelson—Ron Nelson—gets us closer to the arbitration awards being relevant.

I'm not going to change my ruling at this point from the motion in limine; however, defendants need to be aware that I'm close to doing that. And I certainly hope that I don't hear argument in closing, if we get there, without these arbitration awards coming in that suggest that Heartland didn't do something that they could have done towards collecting these debts.

Nelson complains this statement and ruling from the court prevented him from challenging the debt Heartland claimed it was owed by Broken Wing.

The complained-of ruling is one in Nelson's favor. As it did in response to his motion in limine, the court confirmed the arbitration award was not relevant for the jury's consideration. *Cf. State v. Hammer*, 66 N.W.2d 490, 494 (Iowa 1954) ("A party will not be permitted to complain of error with respect to the admission or exclusion of evidence where his contention on appeal is inconsistent with that taken below or where he himself has acquiesced in, committed, or invited the error." (citation omitted)). And nothing in the court's statement that Nelson relies upon prevented Nelson from challenging the debt. The court may have foreclosed one avenue for challenging the debt, but it did not

bar the defendants from trying other tactics. Moreover, even if the court excluded some evidence challenging the debt, Nelson did not make an offer of proof establishing what evidence he was wrongly prevented from using. "[A]n offer of proof is necessary to preserve error. Underlying this requirement is the premise that in ordinary circumstances in the absence of an offer of proof we lack an adequate record to review the ruling." *State v. Schutz*, 579 N.W.2d 317, 318–19 (Iowa 1998) (citation omitted).

We do not consider this argument further.

**B. Effect of Arbitration Award on Successor-Liability Claim.**

Nelson claims the district court erred by giving preclusive effect to the confirmed arbitration award against Broken Wing on the successor-liability claim against him. He maintains Iowa law is inconclusive on the question of whether arbitration rulings should be given preclusive effect and argues it is a violation of his constitutional right to due process to estop him from challenging the damages awarded to Heartland against Broken Wing by the arbitration decision.

The jury concluded Nelson was the successor and "mere continuation" of Broken Wing, which, as a matter of law, makes him liable for the debts of the previous corporation. *See C. Mac Chambers Co., Inc. v. Iowa Tae Kwon Do Academy, Inc.*, 412 N.W.2d 593, 597 (Iowa 1987) (recognizing the successor "will be held liable for the debts of its predecessor when" it "is a 'mere continuation' of the selling corporation"). Nelson does not challenge the jurisdiction of the court that confirmed the arbitration award and entered judgment against Broken Wing in 2014. *See In re Estate of Falck*, 672 N.W.2d 785, 792 (Iowa 2003) ("Even though a judgment may be erroneous, if the court

has jurisdiction over the person and the subject matter, the judgment is conclusive on collateral attack."). Still, Nelson maintains he should have been allowed in this proceeding to collaterally attack the 2014 judgment entered against Broken Wing.

Nelson claims he was not given a full and fair opportunity to challenge the damages in the arbitration proceeding and claims allowing the debt to be entered against him thus violates his constitutional rights to due process. But Broken Wing, of which Nelson is a "mere continuation," was given and took advantage of the chance to defend itself in the arbitration proceedings. Using the same legal counsel as Nelson used in the current proceedings, Broken Wing submitted briefing to dispute the claims submitted by Heartland. As Broken Wing's successor in interest, we consider Nelson as standing in Broken Wing's shoes. *See Abels v. Titan Int'l, Inc.*, 85 F.Supp.2d 924, 933 (S.D. Iowa 2000) ("The law recognizes three categories of nonparties who will be considered in privity with a party to the prior action and who will be bound by a prior adjudication: . . . (2) a successor-in-interest to a prior party. . . ."). Moreover, Nelson actually participated in the arbitration proceeding, as he was the sole owner and representative of Broken Wing, and he signed and submitted an affidavit.

"[A]rbitration awards may have preclusive effect in later litigation if the issues are identical." *Deerfield Constr. Co. v. Crisman Corp.*, 616 N.W.2d 630, 632 (Iowa 2000); *see also* Restatement (Second) of Judgments § 84(1) (Am. Law. Inst. 1982) ("[A] valid and final award by arbitration has the same effects under the rules of res judicata, subject to the same exceptions and qualifications,

as a judgment of the court."). Issue preclusion applies when the following are met:

> (1) the issue in the present case must be identical, (2) the issue must have been raised and litigated in the prior action, (3) the issue must have been material and relevant to the disposition of the prior case, and (4) the determination of the issue in the prior action must have been essential to the resulting judgment.

*Fischer v. City of Sioux City*, 654 N.W.2d 544, 547 (Iowa 2002).

First, Heartland had the burden to establish "and prove and the identity of parties, that is that the parties in the prior action were the same as the parties to the pending action, or that the parties to the pending action are in privity with the parties to the prior action." *See id.* at 548 (citation omitted). As the district court understood, once the jury determined Nelson was the successor in interest and mere continuation of Broken Wing, privity was established. *See Abels*, 85 F.Supp.2d at 933; *see also Brown v. Kassouf*, 558 N.W.2d 161, 163 (Iowa 1997) ("A 'privy' for issue preclusion purposes means 'one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase.'" (citation omitted)). The issue of Broken Wing's breach of contract and resulting debt was identical in both proceedings, and it was raised and litigated in the arbitration proceedings, was material and relevant to the proceedings, and was essential to the initial arbitration ruling and resulting judgment.

The district court did not err in giving preclusive effect to the confirmed arbitration award against Broken Wing on the successor-liability claim against Nelson after the jury determined he was a successor in interest to Broken Wing. *See Winger v. CM Holdings, L.L.C.*, 881 N.W.2d 433, 445 (Iowa 2016) ("Whether

the elements of issue preclusion are satisfied is a question of law." (citation omitted)).

### C. Marshalling Instruction: Adequate Assurances.

At trial, Nelson did not disagree with Jessen's recitation of the business dealings between Heartland and Broken Wing. But Nelson maintained Broken Wing's March 4 letter to Heartland stating it was concerned about Heartland's payment policy on partial deliveries as it had not yet received payment for the January delivery was a request for "adequate assurance."

Pursuant to Iowa Code section 554.2609:

> 1. A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until that party receives such assurance may if commercially reasonable suspend any performance for which that party has not already received the agreed return.
> . . . .
> 4. After receipt of a justified demand failure to provide within a reasonable time not exceeding thirty days such assurance of due performance as is adequate under the circumstances of the particular case is a repudiation of the contract.

Nelson urged the jury to find that Heartland's failure to send payment for the partial delivery or otherwise assure Broken Wing that it would do so was a failure to provide adequate assurance, meaning Heartland repudiated the contracts before Broken Wing stated it was cancelling them. *See* Iowa Code § 554.2609(4) (providing that party's failure to provide adequate assurance after a justified demand is a repudiation of the contract).

Here, Nelson takes issue with the way the court instructed the jury regarding adequate assurances, claiming the instruction was "given in a vacuum"

and the jury "had no understanding that [it] was a defense by" Nelson. He maintains it should have been listed as an affirmative defense in the marshalling instruction.

Because we agree with the district court that the arbitration decision and judgment entered against Broken Wing had preclusive effect regarding the successor-liability claim—meaning Heartland was not required to prove Broken Wing's liability and the damages anew—the question of whether Heartland received adequate assurance is inapposite.

But even if we otherwise considered Nelson's claim, he cannot succeed on the merits. First, the jury was instructed regarding adequate assurances—just not in the way Nelson wished. *See Rivera v. Woodward Resource Ctr.*, 865 N.W.2d 887, 903 (Iowa 2015) ("We have also found harmless error when one instruction arguably omits a legal requirement that is included in subsequent instructions on the ground that the instructions are to be read as a whole."). And second, the jury was specifically asked as part of the special verdict, "Have defendants proven by a preponderance of the evidence that Broken Wing Farms, Inc. requested that Heartland Co-Op provide adequate assurances and Heartland Co-Op failed to provide adequate assurances?" To which the jury marked, "No." "In a special verdict submission it is wholly unnecessary and is generally improper for the jury to be concerned with the effect of its special findings." *Poyzer v. McGraw*, 360 N.W.2d 748, 753 (Iowa 1985). "[I]t is commonly thought to be inappropriate in a special verdicts submission for counsel to direct the jury's attention to the impact of any specific findings." *Id.*

We find no error in the district court's instruction on adequate assurances.

**D. Jury Instruction: Iowa Code section 203.8.**

Nelson argues the district court erred in refusing to instruct the jury as follows, "Grain Payment. Pursuant to Iowa law, [] Heartland Co-Op was required to pay Broken Wing Farms, Inc. for the grain that Broken Wing Farms, Inc. delivered within 30 days of the delivery." *See Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707 (Iowa 2016) ("Iowa law requires a court to give a requested jury instruction if it correctly states the applicable law and is not embodied in other instructions. . . . [W]e review refusals to give a requested jury instruction for correction of errors at law." (citation omitted)). He claims Iowa Code section 203.8 supports this instruction; it provides, in part:

> A grain dealer licensed or required to be licensed pursuant to section 203.3 shall pay the purchase price to the seller for grain upon delivery or demand by the seller, but not later than thirty days after delivery by the seller unless in accordance with the terms of a credit-sale contract that satisfies the requirements of this chapter. The department shall adopt rules for payment by check and electronic funds transfer.

Iowa Code § 203.8(1)(a).

As with the adequate-assurances instruction, the issue of whether Heartland breached the contracts before Broken Wing cancelled them is only pertinent insofar as Heartland had to re-prove Broken Wing's breach and the resulting damages in order to succeed in its successor-liability claim against Nelson. Because we agree with the district court that the arbitration award had preclusive effect regarding those issues of the successor-liability claim, any alleged error is harmless.

We do not consider this claim further.

**E. Motion for Directed Verdict.**

Nelson claims the district court erred in denying his motion for a directed verdict, asking the court to dismiss the successor-liability claim against Nelson for insufficient evidence. "We review the denial of a motion for directed verdict for correction of errors at law." *Fry v. Blauvelt*, 818 N.W.2d 123, 134 (Iowa 2012).

As the jury was instructed, the factors to consider in determining whether Nelson was a successor or mere continuation of Broken Wing are:

> 1. Whether the predecessor simply changed its form of business organization but continued to conduct business in the same manner that it had before the change in form.
> 2. Whether the overall operations remain essentially the same with only a change in name or technical legal entity.
> 3. Whether there is continuity of management with the predecessor.
> 4. Whether there is continuity of ownership with the predecessor.

Here, Nelson maintains that because multiple people testified at trial that the purpose of creating 3N Partnership was to comply with FSA rules, the district court should have found there was insufficient evidence to support those factors and dismissed the claim against him. But this argument fails for two reasons. First, there was no evidence that Broken Wing—as opposed to Nelron, Nelson's replacement, wholly self-owned corporation—could not have joined 3N Partnership in compliance with the FSA rules. And second, the factors do not contemplate the intent behind changing the businesses; finding a continuation does not require a determination that the businesses were changed in an attempt to escape a debt. In other words, it can both be true that Nelson had to change his corporation in order to join 3N Partnership and enable Karen to stay

compliant with FSA guidelines and that the changed company was a mere continuation of Broken Wing. Moreover, the evidence at trial supports the conclusion Nelron—which was also defunct by the time of the 2018 trial—and Nelson were a mere continuation of Broken Wing: the two companies farmed the same ground, maintained the same accounts for various supplies and machines, used the same bank account and fulfilled the same obligations to the bank, and paid no attention to formalities regarding what company grew or sold the grain nor which claimed the profits and dividends.

The district court did not err in denying Nelson's motion for directed verdict.

**III. Conclusion.**

Having reviewed each of Nelson's claims and finding no reversible error, we affirm.

**AFFIRMED.**